ROYCE HOMES, L.P. and
Hammersmith Group,
Inc., Appellants,

v.

Deborah F. BATES, Verdia L. Boyce, Wadie and Demetria Butler, Robert and Billye Evans, Darlene Handy, Josaulyn Hoskins, Jinnell Ray, Trilyon Taylor, and Barbara Wilson, Appellees.

No. 01–08–00191–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 21, 2010.

Kathleen Hopkins Alsina, Patricia Hair, Phelps Dunbar, L.L.P., Houston, TX, for Appellant.

Karl C. Hoppess, Karl C. Hoppess & Associates, P.C., Houston, TX, for Appellee.

Panel consists of Justices KEYES, ALCALA, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Royce Homes, L.P., appeals the order of the trial court confirming an arbitration award and final judgment in favor of appellees, a group of homeowners ("homeowners"). In three issues, Royce Homes argues that (1) the trial court abused its discretion by failing to appoint the arbitrator specified in the parties' arbitration agreement; (2) the trial court erred in failing to vacate the arbitration award because the arbitrator exceeded his powers; and (3) the trial court erred in failing to vacate the arbitration award because it demonstrated a manifest disregard for the law and a gross mistake in interpreting and applying the law.

We affirm.

## Background

The nine homeowner appellees purchased homes from Royce Homes between 1998 and 1999 in the Garden Valley Estates subdivision. In purchasing their homes, each homeowner received a "2–10 Home Buyer's Warranty," which was to be administered by Home Buyer's Warranty, Inc. ("HBW"). The "2–10 Home Buyer's Warranty" stated: "This Warranty is a contract between you and your Builder. HBW is the warranty administrator, but NOT a warrantor under the contract." The arbitration provision in the warranty stated:

Any and all claims, disputes and controversies arising under or relating to this Agreement, including without limitation, any claim of breach of contract, negligent or intentional misrepresentation or nondisclosure in the inducement, execution or performance of any contract, and breach of any alleged duty of good faith and fair dealing, shall be submitted to arbitration by and pursuant to the rules of Construction Arbitration Services, Inc. (hereinafter "CAS")[1] in effect at the time of the request for arbitration. If CAS shall for any reason be unable or unwilling to conduct, or is disabled from conducting such arbitration, the arbitration shall be conducted by and pursuant to the rules of the American Arbitration Association applicable to home warranty arbitration proceedings in effect at the time of the request for arbitration. The decision of the arbitrator shall be final and binding and may be entered as a judgment in any State or Federal court of competent jurisdiction.

. . . .

The parties expressly agree that this arbitration provision involves and concerns interstate commerce and is governed by the provisions of the Federal Arbitration Act, (9 U.S.C. § 1, et seq.), now in effect and as the same may from time to time be amended.

Some of the homeowners[2] also signed earnest money contracts that each contained an arbitration provision in an attached arbitration addendum ("Espree Arbitration Addendum"). That provision stated, "Any controversy, claim or dispute arising out of or related directly or indirectly but not limited to . . . the construction or repair of the home . . . shall be settled by arbitrations [conducted by CAS]."

On February 11, 1999, disgruntled residents of the Green Valley Estates filed suit against their homebuilders, the neighborhood developer, and various other entities. This original lawsuit sought to establish a separate homeowner's association and to address claims surrounding the creation of the subdivision and construction defects. None of the homeowners filed warranty complaints by HBW under the Home Buyer's Warranty provisions for the construction defects that were the subject of their claims. Nor did Royce Homes seek to compel arbitration at this point.[3] After several interventions and amendments of the pleadings, additional plaintiffs were joined, and some plaintiffs expanded their claims to include claims for construction defects, breach of contract, fraud, and DTPA violations. Royce Homes and its general partner Hammersmith were made parties to the litigation in 2002.

In February 2004, the parties entered into a settlement agreement ("Settlement Agreement"). This agreement expressly excluded the homeowners' construction defect claims against Royce Homes and Hammersmith. The Settlement Agreement stated:

Notwithstanding anything to the contrary herein, it is understood and agreed

1. Construction Arbitration Services is an independent arbitration service that specializes in disputes arising from residential home construction.

2. These homeowners include the Evanses, Taylor, and Wilson.

3. Royce Homes states that it filed a motion to compel arbitration with CAS acting as the arbitrator; however, the motion that it cites in its brief is the August 8, 2006 motion that it did not file until after the current parties' disputes were severed from the rest of the case. Royce Homes also points out that the parties' attorneys signed an agreed order to enforce the arbitration agreement in the warranties, but this order was never signed by the trial court and is undated.

that *this settlement* and the compliance with the terms and receipt of and payments made hereunder *shall not settle or affect any of the claims and causes of action arising out of or created by the alleged deficiencies in the construction of any home,* Construction Defects Claims, now pending against Royce Homes, L.P. by any of the homeowners who purchased homes from Royce Homes, L.P. *All claims against Royce Homes, L.P. related to such alleged construction defects remain pending, abated for arbitration* under Cause No. 107,-892–D.... Specifically, all claims against Royce Homes, L.P. related to construction defects in the construction of the property itself ("Construction Defect Claims") as set forth in Plaintiffs' and Intervenors' First Supplemental Petition in Response to DWM Holdings' Special Exceptions and Pursuant to Court Order, shall remain pending and are abated for arbitration.

....

The parties further acknowledge that the purpose of this agreement is to resolve disputed claims made, in order that these parties may buy their peace forever, with the exception of *all construction defects claims* which *are to be resolved through either settlement and/or arbitration.*

....

This document together with the take nothing judgment dismissing Cause No. 107,892 contains the entire agreement between the parties and the terms hereof are contractual and not mere recitals.

....

This agreement shall be governed by the laws of the State of Texas.

(Emphasis added.) The construction defect claims were severed from the rest of the litigation on April 12, 2004.[4] Neither the homeowners nor Royce Homes filed the arbitration proceedings contemplated in the settlement agreement.

On May 6, 2004, the homeowners filed their eleventh amended petition against Royce Homes and its general partner, Hammersmith, on the severed claims. The eleventh amended petition alleged causes of action for breach of contract based on Royce Homes' alleged breach of "numerous material terms of the contractual agreements ... including the failures to construct the homes as promised and in a good and workmanlike fashion [and] the implied warranty of habitability and implied warranty of good workmanship"; common law fraud and unconscionability based on statements and representations made by Royce Homes "concerning the quality of the construction and the skill to be utilized by" Royce Homes; statutory fraud in a real estate transaction in violation of Texas Business and Commerce Code section 27.01; and deceptive trade practices.

Two years later, on June 29, 2006,[5] the trial court notified the parties that it had set the case on the non-jury trial docket on September 6, 2006 and that "there will be no continuances or passes [granted]." A month later, on July 25, 2006, ten of the fifteen homeowners, whose claims had been severed[6] but who had not signed

4. Royce Homes states that the trial court issued an order staying the litigation of the construction defect claims pending arbitration. However, the record does not contain an order to this effect—the one reference made by Royce Homes in its briefing is to the order severing the construction defect claims from the rest of the litigation.

5. The record and the briefing do not reveal what occurred during this two-year gap.

6. This motion to appoint an arbitrator named the following appellees: Bates, Boyce, the

Espree Arbitration Addendums with their earnest money contracts, moved the trial court to appoint an arbitrator pursuant to section 171.041 of the Texas Arbitration Act (TAA). This motion stated:

> All ... 15 homeowner disputes were referred to arbitration by agreement. Five of the homeowners had previously signed an Espree Arbitration Addendum wherein an arbitrator was designated in advance. The remaining [homeowners] have no such agreement, but have agreed to arbitrate solely in accordance with the Texas Arbitration Act.
>
> [The 10 moving homeowners] have proposed to [Royce Homes] that an agreed arbitrator arbitrate all 15 disputes at one hearing. To date, the [homeowners] have received no response to this suggestion or request. Therefore, due to the limited time schedule set forth by the Court, and in order to avoid dismissal, the [10 moving homeowners] are pursuing their rights under the Texas Arbitration Act and the other 5 homeowners are pursuing theirs under their agreements.

(Emphasis added.) The motion also stated that the ten moving homeowners had agreed to no "defined method of appointment of arbitrators" and that it was proper for the trial court to appoint one for them under section 171.041(b) of the TAA. The homeowners suggested three candidates for arbitrator, including Tom McDonald. On July 31, 2006, the trial court appointed Tom McDonald arbitrator for the fifteen homeowners named in the motion.

In response to the homeowners' application to appoint an arbitrator under the TAA, on August 8, 2006, Royce Homes filed a motion to enforce the arbitration agreements signed by all fifteen of the homeowners in purchasing their homes, which provided that CAS should act as arbitrator, and it filed a motion to reconsider the appointment of Tom McDonald as arbitrator. Royce Homes argued that because all fifteen homeowners with pending construction defect claims had signed arbitration provisions in their Home Buyer's Warranty agreements and some of the homeowners had signed arbitration agreements in the Espree Arbitration Addendums, and because both required arbitration to be conducted by CAS, the arbitration should be conducted by CAS.

On August 17, 2006, the five homeowners who had not joined the original motion to appoint an arbitrator pursuant to the TAA[7] moved the trial court for appointment of Tom McDonald as arbitrator for their claims. This motion stated, "At the time of the filing of the first motion for appointment of an arbitrator, it was believed that Construction Arbitration Services ("CAS") would act as arbitrator for the remaining five [homeowners]." The motion stated that the homeowners had attempted to comply with CAS's procedural rules by filing the proper applications and arranging to pay the applicable fees, but CAS refused to accept the role of arbitrator.

Specifically, in his supporting affidavit, the attorney for the homeowners averred that in June 2006, the homeowners contacted CAS through its Construction Dispute Representative, Cardell Wade, who "directed [lawyers for the homeowners] to CAS's website and advised [them] of the necessary applications, rules and information needed" to pursue arbitration though CAS. In July 2006, attorneys for the

---

Butlers, the Evanses, Handy, Hoskins, and Ray.

7. Appellees Taylor and Wilson were specifically named as movants in this second motion to appoint an arbitrator.

homeowners prepared applications and helped the homeowners make arrangements to pay the application fee to CAS "in order to have it immediately appoint its names arbitrator and enter a scheduling order" to avoid the trial court's order for dismissal. The motion further stated:

Then, on August 14, 2006, CAS's representative, Cardell Wade, for no apparent reason, informed counsel for [the homeowners] that CAS would no longer accept the role as arbitrator under these contracts. He further informed counsel that unless the [homeowners] made applications for limited warranty claims, only, through Home Buyer's Warranty, Inc., the purported administrator of an alleged warranty program in which the builder Royce Homes, L.P., attempted to enroll Movants at the time of their respective closings, and Home Buyers Warranty, Inc. and Royce Homes, L.P., made an application to CAS, CAS would not arbitrate these five claims.

Despite being informed that the claims in this dispute were being submitted to arbitration pursuant to the agreements reached in this case and upon the Court's order severing the fifteen remaining claims, Cardell Wade informed counsel for Movants that CAS still refused to accept a request of demand for arbitration from the Movants and that CAS would refuse to act as arbitrator even if ordered by this Court to do so, unless the homebuilder, Royce Homes, L.P., and Home Buyers Warranty, Inc., requested CAS to do so.

CAS's refusal to arbitrate this matter coupled with its refusal to act under any order entered by this Court and Royce Homes, L.P.'s refusal to arbitrate this dispute as a joint claims arbitration leaves Movants with no alternative but to seek appointment of an arbitrator pursuant to Section 171.041 of the Texas Arbitration Act. . . .

The affidavit of the attorney for the homeowners also related the details of the interaction between the homeowners and CAS in support of these claims.

Also on August 17, 2006, Royce Homes filed a motion for reconsideration, arguing that Royce Homes had sought to compel the homeowners to arbitration with CAS since it had first made an appearance in the case and that, under both the TAA and the FAA, the trial court was required to appoint the arbitrator specified in the arbitration agreements.

On August 22, 2006, Royce Homes filed a response to the remaining five homeowners' motion to have Tom McDonald appointed as arbitrator. This response outlined Royce Homes' procedure for resolving warranty disputes, including arbitration before CAS. Royce Homes claimed that it was the homeowners' failure to follow the procedures required to invoke arbitration before CAS that had led to the dispute over appointment of an arbitrator. Royce Homes attached the affidavit of Cardell Wade, which stated:

The CAS Rules for the Arbitration of Home Warranty Disputes . . . require that the Parties agree to utilize the CAS Rules either through a separate agreement or as part of a warranty program. In those instances in which the home is enrolled in a warranty program, a Homeowner making a claim starts the arbitration process by filing the appropriate forms with his or her warranty insurer, which then forwards the case to CAS, which then initiates the arbitration process and appoints an Arbitrator. CAS will accept a court appointment to act as an arbitration administrative agency, pursuant to the terms of a court order issued by a court of competent jurisdiction.

CAS has arbitrated numerous warranty claims involving homes in the Home Buyers Warranty (2–10) program. However, it is necessary for the Homeowner to complete the forms required by Home Buyers Warranty (2–10), and to initiate the process with Home Buyers Warranty (2–10), in order for the Arbitration process to ultimately be administered by CAS.

In a prior phone conference I previously advised Karl Hoppess, Esq., that his client's home is enrolled in the Home Buyers Warranty (2–10) program, and Home Buyers Warranty (2–10) must be contacted in order for this clients to initiate their "Pre-Arbitration" process, and to prevent the Homeowner(s) warranty from being voided with Home Buyers Warranty (2–10), along with the possible resolving [sic] the dispute between the Parties before send [sic] the case to CAS. Upon receipt of the Homeowner(s) case file from Home Buyers Warranty (2–10), CAS can then initiate the Arbitration process, and appoint an Arbitrator from its panel of Arbitrators.

On August 22, 2006, the trial court signed an order denying Royce Homes' motions to enforce the arbitration agreement and to reconsider the appointment of Tom McDonald as arbitrator. On September 1, 2006, the trial court also denied Royce Homes' motion for reconsideration of those rulings and ordered the trial setting removed from its September 6, 2006 docket.

Royce Homes subsequently filed a petition for writ of mandamus in this Court seeking to enforce the arbitration provisions selecting CAS as arbitrator, or alternatively, applying CAS procedural rules. This petition for writ of mandamus was denied without an opinion on the merits on March 29, 2007.[8]

On April 12, 2007, Royce Homes filed a motion with McDonald, the court-appointed arbitrator, again seeking to enforce the arbitration provisions designating CAS as arbitrator, or alternatively, implementing CAS procedures. The arbitrator denied this motion and set a schedule for conducting the arbitration proceedings. At the beginning of the arbitration hearing on November 12, 2007, Royce Homes repeated its request to have CAS appointed as arbitrator or to have the arbitration conducted following CAS procedures. The arbitrator denied Royce Homes' request again and began the hearing.

On January 1, 2008, the arbitrator granted the homeowners collectively a $336,121.26 award, including over $82,000 for actual damages and more than $245,000 as treble damages, plus $75,000 in attorney's fees and $15,000 in litigation expenses.

Royce Homes moved the trial court to vacate the arbitration award. The homeowners filed a motion to confirm the award. On February 29, 2008, the trial court entered a final judgment confirming the full amount of the arbitration award. Royce Homes appeals.

### Controlling Law

We first determine whether the contract is controlled by the Federal Arbitration Act (FAA) or the Texas General Arbitration Act (TAA), or both. The parties dispute which statute governs here. Royce Homes argues that the FAA applies, while the homeowners argue that the settlement agreement provided that it was "governed by the laws of the State of Texas."

---

**8.** *In re Royce Homes, L.P.,* No. 01–06–00920–CV, 2007 WL 926562 (Tex.App.-Houston [1st Dist.] Mar. 29, 2007) (not designated for publication).

The FAA preempts all otherwise applicable inconsistent state laws, including any inconsistent provisions of the TAA, under the Supremacy Clause of the United States Constitution. U.S. CONST. art. VI; *see Allied–Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 272, 115 S.Ct. 834, 838, 130 L.Ed.2d 753 (1995). The FAA applies to contracts involving interstate commerce. 9 U.S.C. § 2. It requires only that interstate commerce be involved or affected. *Allied–Bruce,* 513 U.S. at 277–81, 115 S.Ct. at 841–43; *see also In re Brock Specialty Servs.,* 286 S.W.3d 649, 653 (Tex.App.-Corpus Christi 2009, orig. proceeding) (" 'Commerce' has been broadly defined and encompasses contracts relating to interstate commerce."). Interstate commerce is evidenced by location of headquarters in another state, manufacture of components in a different state, transportation of goods across state lines, and billings prepared in another state, among other factors. *Stewart Title Guar. Co. v. Mack,* 945 S.W.2d 330, 333 (Tex.App.-Houston [1st Dist.] 1997, writ dism'd w.o.j.); *see also Robinson v. TCI/US West Commc'ns Inc.,* 117 F.3d 900, 904 (5th Cir.1997) (defining interstate commerce as "trade, commerce, transportation, or communication among the several States, or between any foreign country and any place or ship outside thereof"). The burden is on the party seeking to compel arbitration to establish its right under the FAA. *Ikon Office Solutions, Inc. v. Eifert,* 2 S.W.3d 688, 696 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

The Texas Supreme Court has held that a Texas choice-of-law provision will not be construed to select the TAA to the exclusion of the FAA unless the clause specifically excludes the application of federal law. *In re L & L Kempwood Assocs., L.P.,* 9 S.W.3d 125, 127–28 (Tex.1999); *Roehrs v. FSI Holdings, Inc.,* 246 S.W.3d 796, 803 (Tex.App.-Dallas 2008, pet. denied). Texas courts have also held that a general choice-of-law clause such as the one in the settlement agreement does not satisfy that standard. *Roehrs,* 246 S.W.3d at 803 (citing *Dewey v. Wegner,* 138 S.W.3d 591, 596 & n. 5 (Tex.App.-Houston [14th Dist.] 2004, no pet.)).

Royce Homes, L.P. is a Delaware Limited Partnership; therefore, this agreement affects interstate commerce. *See Stewart Title Guar. Co.,* 945 S.W.2d at 333. Accordingly, we apply the FAA, while recognizing that the TAA also applies to the extent it is consistent with the FAA. *See Roehrs,* 246 S.W.3d at 803 (citing *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 779–80 (Tex.2006)).

### Review of Confirmation of Arbitration Award

We review de novo a trial court's confirmation of an arbitration award under the FAA based on the entire record. *Myer v. Americo Life, Inc.,* 232 S.W.3d 401, 407 (Tex.App.-Dallas 2007, no pet.); *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.,* 105 S.W.3d 244, 250 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). All reasonable presumptions are indulged to uphold the arbitrator's decision, and none are indulged against it. *Bailey & Williams v. Westfall,* 727 S.W.2d 86, 90 (Tex.App.-Dallas 1987, writ ref'd n.r.e.).

An arbitration award is presumed valid and entitled to great deference. *Myer,* 232 S.W.3d at 407–08. When reviewing an arbitration award, we may not substitute our judgment merely because we would have reached a different decision. *Bailey,* 727 S.W.2d at 90. Because judicial review of an arbitration award adds expense and delay that diminishes the benefits of arbitration as an efficient, economical system for resolving dis-

putes, our review of the arbitration award is "extraordinarily narrow." *See Myer*, 232 S.W.3d at 408. Accordingly, we may not vacate an award even if it is based upon a mistake in law or fact. *Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 266 (Tex.App.-Houston [14th Dist.] 1995, no writ).

The Supreme Court has recently held that the statutory grounds provided in sections 10 and 11 of the FAA for vacating, modifying, or correcting an arbitration award are the exclusive grounds for vacating an arbitration award. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 1403, 170 L.Ed.2d 254 (2008).[9] Section 10(a) permits a court to vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award

upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

## Validity of the Arbitration Proceedings

 In its first and second issues, Royce Homes argues that the trial court erred in appointing an arbitrator who was not specified in the agreement between the parties and that the trial court erred in failing to vacate the arbitration award because the appointed arbitrator exceeded his authority.[10] In its third issue, Royce Homes argues that the trial court erred in failing to vacate the arbitration award because the award demonstrated a manifest disregard of the law and gross mistake.

### A. Scope of Arbitrator's Powers

Royce Homes argues that the arbitration should have been conducted by CAS, or in the alternative, that it should have been conducted following CAS procedures. Royce Homes argues that the trial court erred in appointing Tom McDonald as arbitrator instead of CAS, and that McDonald exceeded the scope of his powers by not referring the arbitration to CAS or, alternatively, by not conducting the arbitration following CAS procedures.

 Arbitration is a matter of contract, and "the power and authority of the arbitrators in an arbitration proceeding is

---

9. *Hall Street* specifically addressed the ability of parties to an arbitration agreement to contractually agree to expanded grounds for judicial review of an arbitration award. The Supreme Court held that parties could not contractually agree to grounds that deviated from those prescribed in the FAA. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 1400–03, 170 L.Ed.2d 254 (2008).

10. We consider Royce Homes' issues one and two together because under the FAA after *Hall Street*, an arbitration award cannot be

vacated based on the appointment of an improper arbitrator unless that appointment would also implicate one of the statutory provisions for vacatur. *See Hall St. Assocs.*, 128 S.Ct. at 1403; *Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 350 (5th Cir.2009) (holding that *Hall Street* restricts grounds for vacatur to those set forth in section 10 of FAA). Therefore, we consider Royce Homes' argument that the trial court erred in appointing Tom McDonald arbitrator as part of its argument that McDonald exceeded his authority.

dependent on the provisions under which the arbitrators were appointed." *Brook v. Peak Int'l, Ltd.,* 294 F.3d 668, 672 (5th Cir.2002) (quoting *Szuts v. Dean Witter Reynolds, Inc.,* 931 F.2d 830, 831 (11th Cir.1991); *see also Myer,* 232 S.W.3d at 408 (holding that arbitrator's authority "is defined by the contract containing the arbitration clause and by the issues actually submitted to arbitration"). Parties to an arbitration agreement may determine by contract the method for appointing an arbitrator and, under the FAA, the agreed upon method of appointment "shall be followed." *See id.* (citing 9 U.S.C. § 5).

However, section 5 of the FAA also provides that the agreed-upon method of appointing an arbitrator can be set aside under some circumstances. Section 5 of the FAA provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. As the Texas Supreme Court has stated, "Courts interpreting the 'fail to avail' or 'lapse' language of the FAA have generally held that the section 5 substitution process should be invoked by the

trial court only when some 'mechanical breakdown in the arbitrator selection process' occurs or when 'one of the parties refuses to comply, thereby delaying arbitration indefinitely.'" *In re La. Pac. Corp.,* 972 S.W.2d 63, 64–65 (Tex.1998) (citing *In re Salomon Inc.,* 68 F.3d 554, 560 (2d Cir.1995)); *see also Pac. Reins. Mgmt. Corp. v. Ohio Reins. Corp.,* 814 F.2d 1324, 1329 (9th Cir.1987) (holding section 5 substitution process can also be used when parties reach impasse in making their selection).

Here, Royce argues that the arbitration of the homeowners' construction defect claims was subject to the arbitration provisions outlined in the "2–10 Home Buyers Warranty" or in the earnest money contracts signed by some of the homeowners. The homeowners dispute that either of those provisions governed the current proceedings, arguing that the settlement agreement governed the arbitration of their construction defect claims.

Therefore, we must first determine which agreement, if any, governed the arbitration of the construction defect claims.

### 1. Settlement Agreement

 The homeowners contend that the settlement agreement contained an arbitration provision that superseded all prior arbitration agreements. The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *Id.*

However, the settlement agreement expressly excepted the construction defect claims of the homeowners who are currently parties to this appeal from the settlement agreement and provided that

those claims remained pending and were "abated for arbitration." The settlement agreement specifically contemplated that the claims would be either settled or arbitrated, but it did not specify a method of arbitration. Subsequently, the homeowners acknowledged that the five homeowners who had signed an Espree Arbitration Addendum for CAS to arbitrate their claims considered themselves bound to arbitrate in accordance with their agreements. However, although all fifteen homeowners were signatories of warranty agreements that contained provisions to arbitrate under CAS rules, the remaining ten homeowners did not consider themselves bound by the terms of those agreements.

■ The homeowners who moved for arbitration acknowledged in a written motion their agreement to submit to arbitration in the Settlement Agreement, but they asserted that the Settlement Agreement entitled them to arbitration under the TAA, which we have held is superseded by the FAA to the extent it is inconsistent with the TAA. No method of arbitration was, however, specified. Under Texas law, "A partially integrated agreement is a final and complete expression of all the terms addressed in that written agreement, but is not a final and complete expression of all the terms the parties have agreed upon." *Morgan Bldgs. & Spas, Inc. v. Humane Soc'y,* 249 S.W.3d 480, 486 (Tex.App.-Beaumont 2008, no pet.). Rather, courts must consider "surrounding circumstances in determining whether, and to what degree, an agreement is integrated." *Id.; see also Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 731–32 (Tex.1981) (holding that surrounding circumstances are considered in determining whether written agreement is complete and exclusive statement of terms); *DeClaire v. G & B McIntosh Family Ltd. P'ship,* 260 S.W.3d 34, 45 (Tex.App.-Houston [1st] 2008, no pet.) (holding that all prior negotiations and agreements are presumed merged into the final agreement but that parol evidence may be admissible to show collateral, contemporaneous agreements that are consistent with the underlying agreement).

■ We hold that, while the Settlement Agreement does constitute an agreement to submit the construction defect claims to arbitration, it does not contain a final and complete expression of all the terms the parties had agreed upon, specifically, the method of arbitration, which the parties had previously agreed should be conducted by CAS. *See Morgan Bldgs. & Spas,* 249 S.W.3d at 486; *see also Sun Oil Co.,* 626 S.W.2d at 731–32; *DeClaire,* 260 S.W.3d at 45.

We turn, therefore, to whether the trial court erred by not referring the arbitration to CAS.

### 2. *Failure to Appoint CAS Arbitrator*

The homeowners contend that, even if the settlement agreement did not supersede the previous arbitration agreements, those arbitration provisions were not binding on the arbitration of the construction defect claims. The homeowners argue that the construction defect claims "are completely independent of the third party insured limited warranty contract and have been maintained without reference to the supplied warranty booklet; therefore these claims are not subject to and are not governed by limited warranty provisions."[11] The homeowners also argue that

---

11. This argument by the homeowners is supported by the affidavit from CAS representative Cardell Wade, which indicated that the homeowners had never filed the construction defect complaints with HBW that they raised against Royce Homes in this litigation and that they were not entitled to proceed with

Royce's two-year delay in seeking to have a CAS arbitration initiated constituted a failure of the agreed method of arbitration and that CAS arbitration was not possible under the circumstances of this case because CAS refused to proceed with the arbitration as the claims stood at the time it was contacted by counsel for the homeowners. We conclude that we need not reach the homeowners' argument that their construction defect claims were not subject to CAS arbitration under their warranty agreements because the trial court did not err in appointing McDonald the arbitrator for all fifteen homeowners.

Section 5 of the FAA provides that the agreed-upon method of appointing an arbitrator can be set aside under some circumstances. 9 U.S.C. § 5; *see also In re La. Pac. Corp.*, 972 S.W.2d at 64–65 (holding that section 5 substitution process should be invoked by trial court when some "mechanical breakdown in the arbitrator selection process" occurs); *Pac. Reins. Mgmt. Corp.*, 814 F.2d at 1329 (holding section 5 substitution process can also be used when parties reach impasse in making their selection).

■■■ Here, the trial court did not abuse its discretion by appointing an arbitrator because the record reflects that there was a mechanical breakdown in the process of appointing CAS as arbitrator. The affidavits of both the homeowners' counsel and of Cardell Wade of CAS reflect that arbi-

tration through CAS could not be conducted unless the homeowners filed their construction defect complaints against Royce Homes through HBW, which the homeowners had declined to do, citing the inapplicability of the warranty agreements to their claims.

Despite having had the warranty agreements in place prior to the initiation of litigation, Royce Homes never moved to compel arbitration conducted by CAS until two years after the settlement agreement was entered and more than four years after it was made a party to the litigation. When the homeowners eventually contacted CAS, CAS refused to serve as arbitrator. Thus, even if Royce Homes did not waive its right to arbitration before CAS, a matter we do not decide,[12] we find that at this point there was a mechanical breakdown in the process of appointing an arbitrator. Therefore, the trial court was justified in invoking the substitution process set out in section 5 of the FAA. *See In re La. Pac. Corp.*, 972 S.W.2d at 64–65; *see also In re Brock Specialty Servs., Ltd.*, 286 S.W.3d 649, 655 (Tex.App.-Corpus Christi 2009, orig. proceeding) ("Section five of the FAA has been utilized in situations ... where the arbitrator specified in the contract was no longer in existence.").

We hold that the trial court did not err in appointing an arbitrator not named in the agreement. We further hold that Tom McDonald did not exceed his authority by

arbitration through CAS until such complaints had been filed with HBW.

Our analysis here does not address the broad arbitration clause in the arbitration addendum to the earnest money contract signed by three of the appellee homeowners. Presumably, they do not dispute that those three homeowners should have been required to arbitrate under the terms of that arbitration agreement except for their arguments that the agreed method of arbitration failed, as discussed below.

12. *See Perry Homes v. Cull*, 258 S.W.3d 580, 590–593 (Tex.2008) (discussing waiver of right to arbitration by substantially invoking litigation process and stating that "a party who enjoys substantial direct benefits by gaining an advantage in the pretrial litigation process should be barred from turning around and seeking arbitration with the spoils").

refusing to refer the arbitration to CAS and refusing to conduct the arbitration and issue the award following CAS procedures because the trial court properly appointed him as an alternate arbitrator when arbitration through CAS failed. McDonald acted within the scope of his authority by deciding the issues properly submitted to arbitration under the parties' Settlement Agreement—the homeowners' claims for construction defects. *See Myer*, 232 S.W.3d at 408.

We overrule Royce Homes' first and second issue.

### B. Manifest Disregard of the Law and Gross Mistake

 Royce Homes also argues that the trial court erred in failing to vacate the award on the common law ground that the award demonstrates manifest disregard of the law and gross mistake. Specifically, Royce Homes argues that "McDonald ignored the well-established law that the rights of the parties are limited by the express warranty agreements into which they entered," that "there was absolutely no evidence to support findings of either liability or actual damages[, or treble damages] under the DTPA," that there was no evidence of any breach of an express or implied warranty or of an unconscionable action, that the homeowners' DTPA claims were barred by the statute of limitations, and that the warranty agreement did not provide a basis for awarding attorney's fees.

As we have already discussed, the United States Supreme Court has expressly rejected the idea that an arbitrator's "manifest disregard of the law" expanded the grounds for vacatur of an arbitration award beyond those listed in the FAA. *Hall Street*, 128 S.Ct. at 1403; *see also Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 350 (5th Cir.2009) (holding that

*Hall Street* restricts grounds for vacatur to those set forth in section 10 of the FAA); *cf. Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (recognizing manifest disregard as ground for vacating arbitration award). All of the authority cited by Royce Homes in its brief in support of these common-law grounds for vacatur predates the Supreme Court's holding in *Hall Street.*

We have already held that the FAA applies to this case. We conclude that *Hall Street* forecloses any common-law grounds for vacatur of an arbitration award such as manifest disregard of the law and gross mistake. *See Hall Street*, 128 S.Ct. at 1403; *see also Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 350 (5th Cir.2009) (holding that *Hall Street* restricts grounds for vacatur to those set forth in section 10 of the FAA); *Anzilotti*, 899 S.W.2d at 266 (holding that courts may not vacate arbitration award even if it is based upon mistake in law or fact).

We overrule Royce Homes' third issue.

### Conclusion

We affirm the judgment of the trial court.