**Opinion issued March 13, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-11-00914-CV**

———————————

**IQ HOLDINGS, INC., YOHANNE GUPTA, AND SAROJ GUPTA,**
**Appellants**

**V.**

**VILLA D'ESTE CONDOMINIUM OWNER'S ASSOCIATION, INC. AND**
**LEE BLASK, Appellees**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-04815**

---

**O P I N I O N**

The parties to this appeal executed a Rule 11 settlement agreement at

mediation in which they agreed, among other things, to (1) execute final settlement

documents to be drafted after the conclusion of the mediation and (2) return to the mediator to have her arbitrate, resolve and render a final decision in disputes "regarding the drafting of the [final settlement] agreement and interpretation of the intent of the parties." A dispute regarding the intent of the parties arose during the drafting of the final settlement agreement, and the parties submitted it to the arbitrator, who issued a final award regarding the meaning of the disputed terms and directed the parties to sign final settlement documents incorporating them.

Appellants IQ Holdings and Yohane and Saroj Gupta (collectively "Gupta Parties") moved to vacate and modify portions of the award. The Gupta Parties complained that the arbitrator ascribed too broad a meaning to the term "Covenant of Mutual and Peaceable enjoyment" and that the Covenant she directed the parties to sign acted as a prior restraint on speech. They also objected that the arbitrator did not require the parties to "expunge" a lis pendens and instead ruled that the parties would satisfy the Rule 11 agreement by having the lis pendens "terminated, released and cancelled" such that it would "have no further legal force or effect."

Appellees Villa D'Este Condominium Association and Lee Blask (collectively "the Association") moved to confirm the award and asserted a claim for breach of the Rule 11 agreement, seeking specific performance (the execution of the final settlement documents in accordance with the arbitrator's award) and attorney's fees.

2

The trial court confirmed the award.  It also granted summary judgment in favor of the Association on its breach of contract claim, ordering specific performance (the execution of the final settlement documents), but denying the Association's request for attorney's fees.

Both sides appealed.  We modify portions of the judgment and affirm the judgment as modified.

## Background

IQ Holdings bought a condominium unit at the Villa D'Este Condominiums in 2006.  In 2009, IQ Holdings sold the unit to Yohanne Gupta, who is its shareholder and CEO, and Saroj Gupta, who is Yohanne's mother.  That same year, IQ Holdings sued the Association to obtain access to its books and records.  The Association countersued, challenging the sale of the unit by IQ Holdings to the Guptas on the basis that IQ Holdings failed to provide proper notice of the sale, and thus deprived the Association of the opportunity to exercise its right of first refusal.  The Association filed a notice of lis pendens on the condominium unit in the Harris County real property records.

The parties mediated the case on January 31, 2011.  In the early morning hours of February 1, they executed a one-page Rule 11 settlement agreement, the relevant terms of which are:

The Parties have agreed to the material terms of a settlement that shall be documented in formal settlement documents that will be prepared in draft form by the Association's counsel. The material terms are:

. . . .

3. Covenant of Mutual and Peaceable enjoyment.

. . . .

6. Dismissal with prejudice and expungement of the lis pendens.

7. The Parties agree to return to [the mediator] to Arbitrate and resolve any disputes regarding the drafting of the agreement and interpretation of the intent of the Parties. [The arbitrator's] decisions shall be final.

After the mediation, a dispute arose regarding the drafting of the final settlement documents. Counsel for the Association proposed a draft final settlement agreement, but the Gupta Parties rejected it as inconsistent with the Rule 11 agreement. The Association requested that the arbitrator resolve the dispute, and the Gupta Parties consented, submitting to the arbitrator a set of proposed draft final settlement documents.

Between February 28 and April 9, 2011, the arbitrator received evidence and written submissions from the parties and conducted telephonic hearings with the parties and counsel. On April 9, 2011, the arbitrator issued an award, attaching the version of the final settlement documents she determined should be executed by the parties, which incorporated portions of both sets of competing settlement documents, along with various exhibits. Exhibit D was the Mutual Covenant of Peaceable Enjoyment ("Covenant"), while Exhibit E was the Agreed Motion for

4

Dismissal with Prejudice and for Termination, Release and Cancellation of Notice of Lis Pendens, with a proposed Order.

On April 12, the Gupta Parties requested that the arbitrator "modify, correct, or clarify the initial award," because, according to them, the arbitrator (1) included a Covenant that acted as a prior restraint on their speech and (2) incorrectly failed to "expunge" the lis pendens as required by the Rule 11 agreement.

On April 13, 2011, the arbitrator made a "Final Arbitration Award." She noted that some of the Gupta Parties' points regarding the use of the word "communication" in the Covenant were well taken, that she had made some of the requested revisions to the Covenant, and that the documents should be further revised to omit Saroj Gupta as a signatory. With respect to the lis pendens, the arbitrator ruled that the parties did not intend, at the time they entered into the Rule 11, to seek a formal expungement and that their intention was merely to extinguish the lis pendens, as contemplated by the Agreed Motion for Dismissal with Prejudice and for Termination, Release and Cancellation of Lis Pendens, Exhibit E to her award. The arbitrator directed the parties to sign the final settlement documents reflecting her revisions by 1 p.m. on April 15, 2011. Mr. Gupta and IQ Holdings did not sign.

The Association moved the trial court to confirm the Final Arbitration Award. It also supplemented its pleadings, adding a claim that Mr. Gupta and IQ

5

Holdings breached the Rule 11 agreement by refusing to sign the final settlement documents as directed by the arbitrator. The Association moved for summary judgment on its breach of contract claim, seeking (1) specific performance in the form of a judgment requiring Mr. Gupta and IQ Holdings to sign the final settlement documents and (2) attorney's fees. The Gupta Parties timely moved to vacate or modify the award on the grounds that the arbitrator exceeded her powers and acted in manifest disregard of the law by imposing a prior restraint on speech and by failing to require expungement of the lis pendens.

After conducting a hearing on the various motions, the trial court denied the motion to partially vacate or modify the award and granted the motion to confirm. The trial court also granted the Association's motion for summary judgment on the basis that the Gupta Parties breached the Rule 11 agreement. Finding that the breach caused the Association irreparable injury, the trial court ordered "a decree of specific performance to compel the Gupta Parties to comply with, perform and satisfy all of their obligations under the [Rule 11] Agreement, the Award, and the Final Award." The trial court denied the Association's request for attorney fees, stating it did so "because the Gupta Parties timely sought judicial review of the Award and the Final Award."

6

## Review of Arbitration Award

We review de novo a trial court's confirmation of an arbitration award.[1] *Royce Homes, L.P. v. Bates*, 315 S.W.3d 77, 85 (Tex. App.—Houston [1st Dist.] 2010, no pet.). But review of an arbitration award is extraordinarily narrow. *Id.* at 85–86. Arbitration is favored as a means of dispute resolution; therefore, courts indulge every reasonable presumption to uphold an award, and none against it. *Id.* at 85; *Kosty v. S. Shore Harbour Cmty. Ass'n, Inc.*, 226 S.W.3d 459, 462 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). An arbitration award is presumed valid and entitled to great deference. *Royce Homes*, 315 S.W.3d at 85. A reviewing court "may not substitute [its] judgment merely because [it] would have reached a different decision." *Id.* at 85; *see Kosty*, 226 S.W.3d at 463.

The grounds for vacating an arbitration award under the FAA are set forth in Sections 10 and 11 of the FAA and are similar to those in the TAA. The FAA permits vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made," while the TAA states that vacatur is available "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4); TEX. CIV. PRAC. &

---

[1] The parties do not dispute the applicability of either the TAA or the FAA. Accordingly, we apply both. *See In re L&L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127–28 (Tex. 1999) (per curiam); *Royce Homes, L.P. v. Bates*, 315 S.W.3d 77, 85 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (applying FAA and TAA to the extent TAA is consistent with FAA).

REM. CODE ANN. § 171.088(a)(3)(A) (West 2011). An award also may be corrected or modified, as opposed to vacated, under the FAA and TAA. A court may modify an award under the FAA where the arbitrators "have awarded upon a matter not submitted to them." 9 U.S.C. § 11(b). Similarly, under the TAA, a court may modify an award if the arbitrators "have made an award with respect to a matter not submitted to them and the award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 171.091(a)(2) (West 2011). The FAA, like the TAA, mandates confirmation absent grounds for vacatur or correction or modification.[2] *Compare* 9 U.S.C. § 9 with TEX. CIV. PRAC. & REM. CODE ANN. § 171.087 (West 2011).

However, a party seeking relief from an arbitration award on these bases bears a heavy burden, as a court may not vacate an award on the grounds that the arbitrator exceeded her powers even if the award is based upon a mistake in law or fact. *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068–70 (2013); *Royce Homes*, 315 S.W.3d at 86. A unanimous United States Supreme Court underscored this point in *Sutter*:

---

[2] One important distinction between the two statutes deserves mention: the TAA, unlike the FAA, does not preclude parties from agreeing to limit the authority of an arbitrator so as to allow for judicial review (and vacatur) of an arbitration award for reversible error. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 97 (Tex. 1991). But this distinction does not matter here because the parties had no such agreement.

8

[C]onvincing a court of an arbitrator's error—even his grave error—is not enough. So long as the arbitrator was 'arguably construing' the contract—which this one was—a court may not correct his mistakes under § 10(a)(4). The potential for those mistakes is the price of agreeing to arbitration.

133 S. Ct. at 2070 (citation omitted).

## The Challenge to the Award

The Gupta Parties contend the award should be vacated, modified, or corrected because the arbitrator exceeded her powers or awarded upon a matter not submitted to her when she entered an award that, according to them, is an affront to their constitutional right to speak freely and fails to effect the parties' bargain with respect to expungement of the lis pendens. *See* 9 U.S.C. §§ 10(a)(4), 11(b); TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.088(a)(3)(A), 171.091(a)(2).

An arbitrator exceeds her power by deciding a matter not properly before her. *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 829 (Tex. App.—Dallas 2009, no pet.); *Barsness v. Scott*, 126 S.W.3d 232, 241 (Tex. App.—San Antonio 2003, pet. denied). Similarly, in order for modification or correction to be appropriate under either the FAA or TAA, the arbitrator must have awarded on a matter that the parties did not agree to submit to her.

Arbitration is a matter of contract, and the power and authority of an arbitrator depends on the provisions under which he was appointed. *Royce Homes*, 315 S.W.3d at 86–87; *Ancor Holdings, LLC*, 294 S.W.3d at 829; *see also Glover v.*

9

*IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003) ("To determine whether an arbitrator exceeded his powers, we must examine the language in the arbitration agreement."). Where parties bargain for an arbitrator's construction of their agreement, an arbitral decision "even arguably construing or applying the contract" must stand, regardless of a court's view of its merits or demerits. *Sutter*, 133 S. Ct. at 2068; *Ancor Holdings, LLC*, 294 S.W.3d at 829 (citing *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1323 (5th Cir. 1994)) (relevant inquiry is whether the arbitrator "had the authority, based on the arbitration clause and the parties' submissions, to reach a certain issue, not whether the arbitrator correctly decided the issue"). We may not vacate an arbitration award under section 10(a)(4) of the FAA based on the arbitrator's errors in interpretation or application of the law or facts. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671, 130 S. Ct. 1758, 1767 (2010) ("It is not enough for petitioners to show that the [arbitration] panel committed an error—or even a serious error.").

## A. Mutual Covenant of Peaceable Enjoyment

The Gupta Parties contend the award should not have been confirmed because the Covenant acts as a prior restraint on free speech in violation of their constitutional rights. *See* U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom of speech"); TEX. CONST. art. I, § 8 ("Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible

for the abuse of that privilege . . . ."). More specifically, they urge that the arbitrator erred in directing the parties to execute the Covenant because "[n]either IQ nor Gupta agreed to any restraint on speech in this Covenant as part of the Rule 11 Agreement."

Our review of an arbitration award, however, is confined to the question of whether the arbitrator was authorized by the parties' agreement to perform the task of interpreting the parties' contract; if she was so authorized, and if she arguably did interpret the parties' contract, we cannot vacate the award on the basis that she performed her task poorly or rendered an erroneous award. *Sutter*, 133 S. Ct. at 2069. We thus analyze the parties' arbitration agreement and the task the arbitrator performed to determine whether the arbitrator arguably did what the contract authorized her to do. *Id*.

The Rule 11 agreement provides: the parties "agree to return to [the mediator] to Arbitrate and resolve any disputes regarding the drafting of the [final settlement] agreement and interpretation of the intent of the parties. [The arbitrator's] decisions shall be final." Not long after the mediation, the Association proposed a draft form of settlement agreement, as the Rule 11 agreement required, and the Gupta Parties refused to sign it, because, according to them, it did not correctly reflect the Rule 11 agreement's terms. The Association requested that the arbitrator resolve the dispute, asking her to "exercise your authority to review the

11

attached settlement documents and determine that they comply with the Rule 11 Settlement Agreement."

On March 7, 2011, the Gupta Parties made their own submission to the arbitrator, which included their proposed draft settlement agreement, with exhibits, which they asserted "more closely mirrored the Rule 11 agreement," along with objections to the Association's proposed drafts, which they contended "attempt[ed] to impose on IQ Holdings burdens far beyond the scope of that agreement." Although the record of the arbitration is not before us, the parties do not dispute that the arbitrator received their submissions and held telephonic conferences with them and their counsel to resolve their dispute.

On April 9, the arbitrator issued her initial award, which was a draft settlement agreement, with exhibits, which she determined embodied the terms of the Rule 11 agreement. Her cover email stated that "the general issues we have arbitrated were embedded in the two drafts. So, my award as arbitrator provides you with an executable basic document, unless you attorneys agree to changes."

On April 12, counsel for the Gupta Parties requested modifications to comport with the terms of the Rule 11 agreement. Counsel wrote the arbitrator: "I know you attempted to craft a Proposed Award which balanced the positions of both sides, yet I feel that several provisions submitted by the opposing side exceeded the parties' agreement in the Rule 11." The letter complained about a

12

supposed prior restraint and various other issues, but nowhere suggested that the arbitrator had acted without authority or decided a matter that the parties had not agreed to submit to her.

In response, on April 13, the arbitrator issued her final award, which reflected some correction and clarification of her initial award. For example, she agreed that Saroj Gupta should not be a signatory. She also noted that some suggested corrections to her use of the word "communication" in the Covenant were well taken, and she revised the Covenant accordingly. She closed by noting she did not anticipate any additional substantive changes and directing the parties to complete the closing by 1:00 p.m. on April 15.

The complained-of portion of the Covenant, which is in fact mutual, states:

(c) The Parties covenant and agree that any actions and encounters between them and their respective agents should not be unprofessional, unduly annoying, alarming or cause personal embarrassment, and the Parties shall refrain from any such conduct.

(d) The Parties covenant and agree that they will mutually respect the right of the other to peaceably enjoy the occupancy and/or the work environment of Villa d'Este, and the Parties agree, for themselves and their representatives, to work cooperatively with respect for the rights and duties of the other Party. The communication between the Parties shall be for a legitimate purpose.

(e) The Parties covenant and agree to have a constructive and not antagonistic environment and will endeavor in good faith to handle business matters in a respectful manner and to handle disagreements in a constructive and civil manner, so that the Parties may truly enjoy the peace and benefit of an amicable settlement.

13

The Gupta Parties maintain that these provisions constitute a prior restraint on speech[3] and assert that an arbitrator cannot trump free speech rights when the parties never agreed "to any restraint on speech in this Covenant as part of the Rule 11 agreement." But this frames the question incorrectly. The question is not whether the Gupta Parties consented, in advance, to, for example, communicate only for a legitimate purpose, as the Covenant requires. Rather, as *Sutter* teaches, the question is only whether the arbitrator had authority—derived from the parties' contract—to perform the task of construing the Rule 11 agreement, and, if so, whether she "arguably" did so. The Gupta Parties nowhere contend that the arbitrator lacked authority to decide what the parties meant when they agreed to a "Covenant of Mutual and Peaceable Enjoyment"—they complain only that she ascribed too broad a meaning to the term.[4] Moreover, the record demonstrates that

---

4    While the argument has some superficial appeal, it ignores paragraph 4(b) of the Covenant, which expressly reserves the parties' constitutional rights:

> By this Covenant, ***no Party is seeking to, or agreeing to, waive, abridge, impair or limit the rights assured by*** the Declaration, the Texas Uniform Condominium Act, or ***the laws and constitution of the State of Texas or of the United States***.

(Emphasis added.) In any event, whether the Covenant actually abridges the Gupta Parties' free speech rights is a question we do not reach.

4    Specifically, the Gupta Parties contend that, although the Rule 11 agreement reflects that the parties agreed to a "Covenant of ***Mutual and Peaceable*** enjoyment," they actually intended to agree only to a "covenant of ***quiet*** enjoyment," which is a covenant implied in favor of tenants in leases. *See HTM Rest., Inc. v. Goldman, Sachs & Co.*, 797 S.W.2d 326, 328 (Tex. App.—Houston

the arbitrator performed the task the parties bargained to have her perform. Because the arbitrator interpreted the disputed provisions of the parties' Rule 11 agreement, and the Rule 11 agreement gave her the authority to do just that, we hold that the arbitrator, in rendering the award, decided the matter submitted to her and therefore did not exceed her powers. *See Sutter*, 133 S. Ct. at 2070–71; *Ancor Holdings, LLC*, 294 S.W.3d at 830 (arbitrator's powers determined by examining the arbitration clause to which parties agreed); *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 684 (Tex. App.—Dallas 2010, pet. denied) (noting arbitrator's authority is derived from arbitration agreement and holding complaint that arbitrator erred by making legally incorrect determination was not complaint that arbitrator exceeded powers); *Allstyle Coil Co. v. Carreon*, 295 S.W.3d 42, 44 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (scope of arbitrator's authority depends on agreement). It follows from this conclusion that

---

[14th Dist.] 1990, writ denied) ("In every lease of land , in the absence of express language to the contrary, there is an implied covenant that the lessee shall have the quiet, peaceful enjoyment of the leased premises."). But the Rule 11 agreement does not use the words "covenant of quiet enjoyment." Nor do the Gupta Parties harmonize the Rule 11 agreement's use of the word "mutual" with their contention that the parties meant only to create a unilateral "covenant of quiet enjoyment" in the Gupta Parties' favor.

15

we reject the Gupta Parties' challenge to the award under sections 10(b) and 11(b) of the FAA and Sections 171.088(a)(2)(A) and 171.091(a)(2) of the TAA.[5]

The Gupta Parties also argue that the award should be vacated based on the common-law doctrine of manifest disregard of the law. But we previously have held that *Hall Street* forecloses that claim. *Royce Homes*, 315 S.W.3d at 90 (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584, 128 S. Ct. 1396, 1403 (2008)); *see Ancor Holdings, LLC*, 294 S.W.3d at 829 (citing *Hall St. Assocs.* and stating, "[M]anifest disregard of the law and gross mistake are not grounds for vacating an arbitration award under the FAA . . . ."); *see also Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) (holding "manifest disregard of the law" is not independent ground for vacating arbitration award because it is not contained in FAA); *Callahan & Assocs. v. Orangefield Indep. Sch. Dist.*, 92 S.W.3d 841, 844 (Tex. 2002) (statutory grounds for allowing court to modify award are limited to those TAA expressly identifies). And, even if that were a viable theory for vacatur, there is no indication in the record that the arbitrator acknowledged and deliberately flouted the law. *See Prestige Ford v. Ford Dealer Comp. Servs., Inc.*, 324 F.3d 391, 395 (5th Cir. 2003) (manifest disregard by arbitrator requires that arbitrator recognized clearly governing

---

[5]     The Gupta Parties' reliance on *Brammer v. KB Home Lone Star, L.P.*, 114 S.W.3d 101 (Tex. App.—Austin 2003, no pet.) is unavailing because, while it analyzes free speech claims, it does not involve an arbitration agreement.

16

principle and ignored it), *overruled by Hall St. Assocs.*, 552 U.S. at 585, 128 S. Ct. at 1403–04. Accordingly, we will not disturb the award based on an alleged manifest disregard of the law.

Finally, the Gupta Parties contend that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, provides a basis for vacatur, modification, or correction. U.N. Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 [hereinafter Convention]; *see also* 9 U.S.C. §§ 201–208. We disagree. The purpose of the Convention is to leave to the country in which or under the law of which the award was made—the country of primary jurisdiction—the decision whether to set aside an award. *Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742, 746 (5th Cir. 2008). The Gupta Parties rely on two provisions in the Convention's Article V, but those govern recognition and enforcement in countries in which the award was *not* made and thus do not govern this case.[6] *Gulf Petro Trading Co.*, 512 F.3d at 746–47; *see also Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274,

---

[6]    The first is similar to provisions of the FAA and TAA that we have already decided were not satisfied. *See* Convention, art. V(a)(1)(c) (permitting a country of secondary jurisdiction to refuse recognition and enforcement if the award "contains decisions on matters beyond the scope of the submission to arbitration"). The second permits a country having secondary jurisdiction to refuse recognition and enforcement if the award would be contrary to the public policy of *that* country. *See* Convention, art. V(a)(2)(b).

287–88 (5th Cir. 2004) (noting courts of a primary jurisdiction country apply their own domestic laws in evaluating a request to annul or set aside an arbitral award). Here, there is no dispute that the United States is the country having primary jurisdiction over the award. Accordingly, under the Convention, the award may be set aside or modified only in accordance with applicable Texas or federal law, neither of which permits vacatur, modification, or correction in this instance.

We conclude that the trial court did not err in rejecting each theory for vacating, modifying or correcting the arbitration on the basis that it acts as a prior restraint on speech.

### B.    Lis Pendens

The Gupta Parties also argue that the arbitration award should be vacated, modified, or corrected because the arbitrator failed to require that the Association abide by its agreement in the Rule 11 agreement to secure the "Dismissal with prejudice and *expungement* of the lis pendens," which, according to the Gupta Parties, requires expungement as provided in Texas Property Code § 12.0071.[7] (Emphasis added.) The agreed order that the Association proposed—and that the

---

[7]    *See* TEX. PROP. CODE § 12.0071(a) (West Supp. 2013) (describing procedures to be used in applying to court to expunge a notice of lis pendens); § 12.0071(c) (West Supp. 2013) (noting court shall order the notice of lis pendens expunged if it determines that (1) the pleading upon which it is based does not contain a real property claim; (2) the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim; or (3) the person who filed the notice did not effect service as required by (d)).

arbitrator approved in her award for filing with the court—ordered that the lis pendens was "hereby TERMINATED, RELEASED AND CANCELLED for all purposes and the said Lis Pendens shall have no further legal force or effect." It did not use the term "expunged" despite the fact that the Rule 11 agreement reflected the parties' agreement that the lis pendens be dismissed with prejudice *and* expunged.

But the question, as discussed above, is not whether the arbitrator resolved the parties' dispute correctly. It is whether she arguably construed the contract the parties agreed to have her construe. *Sutter*, 133 S. Ct. at 2070. Her award makes clear that she did; it explained:

> The use of the word "expungement" [in the Rule 11] was casual, not formal, and there was no intent that it be taken literally. There was no intention of the parties to agree to findings of fact, fault or comment on whether there had been, at any time, any proper or improper filing of the list [sic] pendens. The record of the arbitration has demonstrated that the Exhibits A, B, C, and E, fully accomplish the intentions of the Parties at the time of the Rule 11 Agreement and that no purpose is served by a statutory Expungement. The word "expungement" was a generic statement that the lis pendens would have no further life at the conclusion of the dismissal with prejudice. The parties did not agree that the lis pendens would be adjudicated, directly or indirectly, or by implication. The April 8th Exhibits A, B, C, and E correctly meet and accomplish the intentions of the Parties.

Because the arbitrator construed the contract the parties bargained for her to construe, we conclude the trial court did not err in refusing to vacate, modify, or correct the award on the grounds that the arbitrator did not require a formal

19

expungement as provided in Texas Property Code § 12.0071. We also conclude that the trial court did not err by failing to sign an order for expungement of the lis pendens. *See Sutter*, 133 S. Ct. 2070–71; *Ancor Holdings, LLC*, 294 S.W.3d at 830 (arbitrator's powers determined by examining the arbitration clause to which parties agreed); *Centex/Vestal*, 314 S.W.3d at 684 (same); *Allstyle Coil Co.*, 295 S.W.3d at 44 (same).

## Breach of Settlement Agreement

In their first and third issues, the Gupta Parties contend the trial court erred in granting summary judgment in favor of the Association on its claim that the Gupta Parties breached the Rule 11 agreement by failing to sign the final settlement documents. In the sole issue in its appeal, the Association argues that, because the trial court granted summary judgment on the breach of contract claim, it erred by denying the Association's request for attorney's fees.

### A. Summary Judgment Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable

20

inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker,* 249 S.W.3d 392, 399 (Tex. 2008). In a traditional summary-judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 83 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

## B. Analysis

The Gupta Parties contend the trial court erred in finding that the Gupta Parties' election to seek judicial review of the award, rather than sign the final settlement documents by the deadline imposed by the award, was a breach of the Rule 11 agreement. The Association responds that the trial court correctly found a breach based on their failure to sign the final settlement documents by 1 p.m. on April 15, 2011, as the arbitrator's award directed, and it argues that the trial court erred in awarding attorney's fees to the Association.

The Gupta Parties' argument finds support in *Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225 (Tex. App.—Houston [14th Dist.] 1993, writ denied). In that case, an arbitration award required B&W to pay $1 million to PMAC within thirty days of the award, but B&W did not pay and instead moved to vacate or modify the award. *Id.* at 229. PMAC moved to confirm, asserted that

21

B&W's failure to pay by the arbitrator's deadline was a breach of the parties' agreement that the award would be final, and sought attorney's fees under Section 38.001 of the Civil Practice and Remedies Code. *Id.* at 236. The Fourteenth Court of Appeals concluded that the parties' agreement that the award be final did not preclude them from challenging the award under the FAA. *Id.* Accordingly, there was no breach, and the award of attorney's fees was improper. *Id.*

This case is the same. The only breach of contract claimed by the Association is that the Gupta Parties did not sign the final settlement documents by April 15, the deadline set by the arbitrator. But the Rule 11 agreement did not require anyone to sign by that time, nor did it waive any party's right to seek judicial review of the award. Accordingly, we conclude, as did the *Babcock* court, that the Gupta Parties' election to seek judicial review of the award before complying with it did not constitute a breach of the Rule 11 agreement. We therefore hold that the trial court erred by granting summary judgment on the Association's breach of contract claim and awarding specific performance. *See id.* ("Where the parties anticipate a dispute and provide a contractual method for its resolution, invocation of that method is not a breach of contract."); *see also Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 436 (Tex. App.—Dallas 2004, pet. denied) (reversing trial court's award of attorney's fees for enforcement of award).

22

Because we have held that the trial court improperly granted summary judgment on the Association's breach of contract claim, and that claim was the Association's sole basis for recovering attorney's fees, we need not address the Association's cross-appeal regarding attorney's fees. *See MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009) (to recover fees under section 38.001(8) "a litigant must . . . prevail on a breach of contract claim . . . ."); *see also Cytogenix, Inc.*, 213 S.W.3d at 489 (stating attorney's fees may be recovered by "party who prevails on a breach of contract claim").

## Conclusion

The trial court correctly confirmed the arbitration award but incorrectly granted summary judgment and awarded specific performance on the breach of contract claim. We modify the judgment to delete the summary judgment and order of specific performance,[8] and we affirm the judgment as modified.

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

---

[8] The judgment is modified to delete the last sentence of paragraph 9, the last sentence of paragraph 10, the entirety of paragraphs 11 and 12, the last paragraph on page 5, the entirety of page 6, and the first paragraph on page 7.