Opinion issued July 15, 2010.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00076-CV

———————————

Petroleum Analyzer Company LP, Appellant

V.

Franek
Olstowski, Individually, and DBA Atomic Analytical Consulting Services and Atom
Instrument Corporation, Appellees, Appellee



 



 

On Appeal from the 269th District Court

Harris County, Texas



Trial Court Case No. 2006-53995

 



 




 

MEMORANDUM
OPINION

          Appellant,
Petroleum Analyzer Company LP (PAC), files a motion for rehearing and a motion
for en banc reconsideration of our memorandum opinion issued March 4, 2010 that
upholds an arbitration award and final judgment in favor of appellee, Franek
Olstowski, and a summary judgment in favor of appellee, Atom Instrument
Corporation (Atom).  Having received a
response from Olstowski and Atom, we grant PAC’s motion for rehearing and
withdraw our March 4, 2010 memorandum opinion and judgment, and issue this
memorandum opinion and judgment in their stead to clarify our analysis of one
issue raised by PAC.  Because we withdraw
our March 4, 2010 opinion, PAC’s motion for en banc reconsideration is rendered
moot.  See Brookshire Brothers, Inc. v. Smith, 176 S.W.3d 30, 33 (Tex.
App.—Houston [1st Dist.] 2004, pet. denied) (op. on reh’g) (noting that motion
for en banc reconsideration becomes moot when motion for rehearing is granted
and new opinion and judgment issue). 
Through its first, third, and fourth issues in its original appellant’s
brief,[1] PAC contends the trial court
erred when it granted Atom’s no-evidence motion for summary judgment because
(1) the trial court granted Atom’s motion for summary judgment before Atom had
filed an answer to PAC’s original petition, (2) Atom’s motion for summary
judgment is “predicated solely on the doctrine of res judicata” and the trial
court erred by granting a summary judgment based on an affirmative defense that
was never pleaded, and (3) the lawsuit between PAC and Atom had been stayed by
the trial court.  In its second issue in
its original appellant’s brief, PAC contends the trial court erred when it
granted attorney’s fees to Atom in conjunction with granting Atom’s summary
judgment.  In its fifth issue in its
original appellant’s brief, PAC argues that the trial court erred in granting
Olstowski’s motion to compel arbitration. 
In its sixth issue in its original appellant’s brief, PAC contends the
trial court erred in confirming and not vacating the arbitration award.  

          We
affirm.

Background

          This
appeal arises from an ownership dispute as to certain patents and other
intellectual property related to excimer lamp technology, and a dispute as to
Olstowski’s right to control the excimer lamp technology he designed while
employed as a consultant for PAC and other companies.  PAC contends Olstowski breached a consultant
and non-disclosure agreement by applying for patents for this technology and by
sharing and attempting to sell the technology to PAC’s competitors and
customers.        

          In
June 2001, Antek Instruments, L.P. (now owned by PAC) retained Olstowski as a consultant
to provide “services for research, development and testing of products and/or
technologies that may be incorporated into products or services provided by
[Antek].”  This arrangement was
memorialized by a “Consultant Agreement” signed by Olstowski and Jay Szinyei,
then Antek’s Manager of Engineering.  The
Consultant Agreement expressly required that it may not be modified except by a
writing signed by both parties.  

          Antek
knew that, while Olstowski worked on projects for Antek, he was also a consultant
for other companies that produced petroleum products.  The Consultant Agreement, therefore, defined
a non-exclusive relationship for Olstowski to provide personal services to
Antek.  Pursuant to the Consultant
Agreement, “[a]ll [c]onfidential [i]nformation, technology, prototypes, and
products developed by [Olstowski] while providing service for Antek [would] be
the exclusive property of Antek.”

          According
to Szinyei, the principal drafter of the Consultant Agreement, the agreement
covered individual projects assigned to Olstowski by Antek.  This limitation of the scope of the services
enabled Antek to control the amount of time expended by Olstowski on projects
and thereby control Antek’s expenses. 
Thus, the Consultant Agreement required that Olstowski be assigned each
consultant project. After being assigned a consultant project, any information,
technology, prototypes, or products developed by Olstowski while providing such
service then became the exclusive property of Antek.  

          In
March 2002, Olstowski informed Szinyei about his idea to develop an excimer
light source specifically intended to measure sulfur using ultraviolet (UV)
fluorescence.  Thereafter, Olstowski told
Tom McMullen, Antek’s president, and Szinyei about his idea.  Antek did not want to assume the risk of
investing its resources into the excimer technology, and decided that Olstowski
could pursue the project on his own time. 
Antek informed Olstowski of this decision.  Olstowski was also told that if he was
successful in his research, Antek would be interested in talking with Olstowski
about using the excimer technology in its equipment and requested “first dibs”
on considering whether to license the technology.    

          The
Consultant Agreement was never modified in writing and Olstowski was never
assigned to work on excimer technology as an Antek or PAC project.  Antek 
had specifically discussed modifying the consultant agreement through a
“carve out” agreement that stated the excimer project was not being done
pursuant to the Consultant Agreement; however, a “carve out” agreement never
materialized.  

          By
December 2002, Olstowski had developed the excimer technology.  Although Olstowski developed the excimer
technology on his own time and with his own money in his own laboratory, Olstowski
performed tests and generated data on the excimer technology using PAC
employees and equipment. 

          On
December 27, 2002, in his own name and with his own lawyer, Olstowski filed a
patent application titled “Excimer UV Fluorescence Detection.”  Olstowski then informed Antek that he had
filed a patent application, and that Antek, as required by the 2001 Consultant
Agreement, would need to sign a non-disclosure agreement with him before he
would disclose his excimer technology to them. 
Antek did not object to Olstowski’s filing of the patent application.

          On
January 28, 2003, Antek and Olstowski entered into a Mutual Non-Disclosure
Agreement (MNDA) for Olstowski to conduct a feasibility study to investigate
the possibility of incorporating the Olstowski Excimer Technology into the
Antek Technology, or to use the Olstowski Excimer Technology to develop new
products for Antek.  The MNDA states:








          WHEREAS,
OLSTOWSKI has developed technology using excimer lamps and can detect
substances using excimer fluorescence (hereafter “Olstowski Technology”); and

 

          WHEREAS,
ANTEK had developed products for detecting substances (hereafter “Antek
Technology”), but has not developed and does not possess technology to detect
substances using excimer fluorescence as embodied in the Olstowski Technology;
and

 

          WHEREAS,
ANTEK is desirous to conduct a feasibility study in association with OLSTOWSKI
to investigate the possibility of incorporating the Olstowski Technology into
the Antek Technology, or to use the Olstowski Technology to develop new
products (hereafter “Project”).

 

          . . . .

 

          If either
Party brings an action to enforce the terms hereof, the prevailing Party in
such action shall be entitled to reasonable attorney’s fees. . . .  Any controversy or claim arising out of or
relating to this Agreement will be submitted to final and binding arbitration
with the American Arbitration Association in accordance with the Commercial
Arbitration Rules.  Judgment upon an
award rendered by the arbitrator may be entered in and by any court having
jurisdiction.

 








          In
the latter half of 2003, Antek and Olstowski negotiated a license agreement for
Antek to license the excimer and related technology from Olstowski.  Proposed licensing agreements were exchanged
for over three years while Olstowski continued to work with PAC under the
Consultant Agreement, MNDA, and later an additional Non-Disclosure/Non-Use
Agreement (NDNUA).  In 2004, Antek became
a subsidiary of PAC.

          In
March 2005, PAC and Olstowski entered into the NDNUA, signed by PAC’s
president, McMullen.  Under the NDNUA,
Olstowski agreed to continue to disclose his excimer technology to PAC, and PAC,
in turn, promised to keep the Olstowski Technology secret and promised not to
use the Olstowski Technology.  The NDNUA
stated in part:








          In order that
we may be more free and open with you, it is necessary to have your promise
that you and your employer, if any, will not use or divulge any confidential
business information or proprietary designs, processes, algorithms, machines,
drawings, technical information or trade secrets which may be provided you by
Franek Olstowski for the particular field hereafter defined. [D]efining the
field applicable to this Agreement . . . excimer lamps or the detection of
substances using excimer fluorescence and the like.

 

          . . . .

 

          This
Agreement controls over any prior written agreements.

 

          . . . . 

 

          Any
controversy or claim arising out of or relating to this Agreement will be
submitted to final and binding arbitration with each party selecting an
arbitrator, and the two party-appointed arbitrators selecting a neutral
arbitrator.  The arbitration shall be
conducted under the Federal Arbitration Act because the parties agree that
interstate commerce is affected, further the parties acquiesce to the
jurisdiction of the U.S. District Courts and a judgment upon an award rendered
by the arbitrators may be entered in and by the U.S. District court.

 

          . . . . 

 

          RECEIVING
PARTY ACCEPTED AND AGREED TO: 

          Signature:
  s/ Thomas McMullen 

          Print Name:          Thomas E. McMullen

          Employer:   PAC

          Date:           14 May 2005

 








Olstowski provided confidential
information to PAC pursuant to the NDNUA. 

          Eventually,
the relationship between PAC and Olstowski soured and discussions about a
licensing agreement between the two parties broke down.  In August 2006, Antek,  PAC, and their attorneys informed Olstowski
that Antek or PAC claimed ownership in the excimer technology.  PAC and Olstowski then asserted conflicting
claims as to the ownership of the excimer technology.  

          In
August 2006, PAC filed suit against Olstowski and Atom, Olstowski’s consulting
company, alleging claims for declaratory relief, tortious interference with
continuing business relations, conversion of intellectual property, breach of
oral contract, attorney’s fees, restitution/unjust enrichment, fraudulent
inducement, and negligent misrepresentation. 
PAC also requested a temporary and permanent injunction.  Olstowski counterclaimed for breach of the
NDNUA, breach of the MDNA, and breach of the Consultant Agreement.  Olstowski also filed suit against Robert
Strozier, PAC’s patent attorney, making an additional claim for return of
Excimer Technology files related to the prosecution of European and Japanese
patents.  The Strozier case was
consolidated with the suit between PAC and Olstowski and Atom; however,
Olstowski later non-suited against Strozier. 


          Upon
Olstowski’s motion, the trial court compelled the dispute between Olstowski and
PAC to arbitration in January 2007. 
Pursuant to the NDNUA, the trial court ordered PAC and Olstowski to
arbitrate their respective claims against each other, and stayed the suit
between Olstowski and Strozier until the conclusion of the Arbitration.  The court did not compel Atom and PAC to
arbitrate and the suit between PAC and Atom remained active.  

          After
the trial court denied a motion to reconsider the order compelling the dispute
to arbitration, PAC filed a petition for a writ of mandamus against the trial
court with this Court, claiming the trial court erred by entering an order that included Atom in the
arbitration proceedings.  We denied PAC’s
petition.  PAC then filed a petition for
a writ of mandamus with the Texas Supreme Court.  The Supreme Court also denied PAC’s petition. 

          An
arbitration hearing was held in August 2007, and the arbitration panel rendered
a unanimous award in favor of Olstowski in October 2007.  The panel found, among other things, that
Olstowski was the exclusive and sole owner of all the technology in dispute,
and enjoined PAC from claiming ownership in or using the technology, and from
interfering with Olstowski’s use and enjoyment of the technology.  The panel declared, by its actions and by
signing the MNDA, which was “all but an admission by [PAC] that it did not
develop the excimer technology, and does not own such technology,” that PAC “waived
any claim of ownership of the excimer technology, if it was ever entitled to
the same.”  The panel awarded Olstowski
declaratory relief, and fees and costs of $449,150.00, but also awarded
restitution and contract damages of $323,993.05 to PAC.  The trial court confirmed the arbitration award
on November 6, 2007, concluding the case between PAC and Olstowski. 

          Olstowski
subsequently alleged that PAC sent letters to the U.S. Patent and Trademark
Office, and used and disclosed Olstowski’s trade secrets and technology, in
violation of the trial court’s November 2007 order.  Olstowski filed a Motion for Contempt with
the trial court in February 2008; however, before the court ruled on the
motion, PAC filed a notice of removal to the United States District Court, Southern
District of Texas, Houston Division. 
Olstowski moved to remand the case and requested rule 11 sanctions.  In May 2008, the United States District Court
remanded the case back to the trial court, did not grant Olstowski’s request
for rule 11 sanctions, but did grant Olstowski’s request for costs and attorney’s
fees because “[PAC] lacked an objectively reasonable basis for seeking
removal.”  

          In
January 2008, Atom filed a no-evidence motion for summary judgment to resolve
all claims by PAC against Atom.  In
August 2008, the trial court ruled on the summary judgment without hearing or
further notice to the parties, granted the summary judgment in favor of Atom,
and disposed of all causes of actions between the parties.  It also ordered PAC to pay Atom’s attorney’s
fees and ordered conditional awards in the event of an appeal by PAC.  This appeal followed.

Motion to Compel
Arbitration

          In its fifth issue, PAC argues
that the trial court erred by granting Olstowski’s motion to compel
arbitration.  We address (A) the
controlling law; (B) the standard of review for arbitration conducted under the
Federal Arbitration Act (FAA); and (C) PAC’s arguments.

          A.      Controlling Law

          We must determine whether the contract
is controlled by the FAA or the Texas Arbitration Act (TAA), or both.  See Royce Homes, L.P. v. Bates, No.
01-08-00191-CV, 2010 WL 184216, at *5 (Tex. App.—Houston [1st Dist.] Jan. 21,
2010, no pet. h.).  PAC contends the FAA
does not apply.         

          The
FAA preempts all otherwise applicable inconsistent state laws, including any
inconsistent provisions of the TAA, under the Supremacy Clause of the United
States Constitution.  U.S. Const. art. VI, cl. 2; see
Allied-Bruce Terminix Co. v. Dobson, 513 U.S. 265, 272, 115 S. Ct. 834, 838
(1995); Royce Homes, L.P., 2010 WL 184216 at *6.  When there is an express agreement to
arbitrate under the FAA, courts have upheld such choice-of-law provisions even
though the transaction at issue does not involve interstate commerce.  In re Kellogg Brown & Root, 80
S.W.3d 611, 617 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding).  As the Kellogg court explained, when
“the parties agree to arbitrate under the FAA, they are not required to
establish that the transaction at issue involves or affects interstate
commerce.”  Id.

          In
the absence of an express agreement to arbitrate under the FAA, a party may
establish the applicability of the FAA by showing that the transaction affects
or involves interstate commerce.  Id.  Interstate commerce may be evidenced by
location of headquarters in another state, manufacture of components in a
different state, transportation of goods across state lines, and billings
prepared in another state, among other factors.  Stewart Title Guar. Co. v. Mack, 945
S.W.2d 330, 333 (Tex. App.—Houston [1st Dist.] 1997, writ dism’d w.o.j.);
see also Robinson v. TCI/US West Commc’ns Inc., 117 F.3d 900, 904 (5th Cir.
1997) (defining interstate commerce as “trade, commerce, transportation, or
communication among the several States, or between any foreign country and any
place or ship outside thereof”).          

          The
Texas Supreme Court has held that a Texas choice-of-law provision will not be
construed to select the TAA to the exclusion of the FAA unless the clause
specifically excludes the application of the federal law.  In re L & L Kempwood Assocs., 9
S.W.3d 125, 127–28 (Tex. 1999); Royce Homes, L.P., 2010 WL 184216 at
*6.  Texas courts have also held that a
general choice-of-law clause such as the one in the NDNUA is insufficient to
invoke the TAA to the exclusion of the FAA.  
Royce Homes, L.P., 2010 WL 184216 at *6. 








          Here,
the contract between PAC and Olstowski provides, “[t]he arbitration shall be
conducted under the Federal Arbitration Act because the parties agree that
interstate commerce is affected.” 
Because PAC and Olstowski signed a contract to arbitrate under the FAA
and expressly agreed that interstate commerce is affected by the contract, they
are bound to their agreement.   See In re Kellogg, 80 S.W.3d at 617
(concluding that parties were “not required to establish that the transaction
at issue involves or affects interstate commerce” because parties had agreed to
arbitrate under FAA); see also W. Dow Hamm III Corp. v. Millennium Income
Fund, L.L.C., 237 S.W.3d 745, 751 (Tex. App.—Houston [1st Dist.] 2007, no
pet.) (holding, in addition to other reasons, that FAA applied to arbitration
agreement because parties expressly agreed in arbitration agreement that
transaction involved interstate commerce) (citing Jack B. Anglin Co. v. Tipps,
842 S.W.2d 266, 269–70, 272 (Tex. 1992)). 
Moreover, even if the parties had not expressly agreed that interstate
commerce is affected, PAC is a Delaware limited partnership; therefore, this
agreement affects interstate commerce.  See
Stewart Title Guar. Co., 945 S.W.2d at 333; Royce Homes, L.P., 2010
WL 184216 at *6.  Accordingly, we apply
the FAA, while recognizing that the TAA also applies to the extent it is
consistent with the FAA.  See Royce
Homes, L.P., 2010 WL 184216 at *6 (citing In re D. Wilson Constr. Co.,
196 S.W.3d 774, 779–80 (Tex. 2006)).

          B.      Standard
of Review

           Arbitration is a contractual proceeding by
which the parties, in order to obtain a speedy and inexpensive final
disposition of disputed matters, consent to submit the controversy to
arbitrators for determination. See Porter & Clements, L.L.P. v. Stone,
935 S.W.2d 217, 221 (Tex. App.—Houston [1st Dist.] 1996, no writ).  “Whether an arbitration agreement is
enforceable is subject to de novo review.” 
In re Labatt Food Serv., L.P., 279 S.W.3d 640, 643 (Tex. 2009). 

          A
party seeking to compel arbitration under the FAA must establish that there is
a valid arbitration agreement and that the claims raised fall within that
agreement’s scope.  In re Kellogg
Brown & Root, Inc., 166 S.W.3d 732, 737 (Tex. 2005); J.M. Davidson,
Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003).  Under the FAA, ordinary principles of state
contract law determine whether there is a valid agreement to arbitrate.  In re Kellogg Brown & Root, 166
S.W.3d at 738 (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S.
938, 944, 115 S. Ct. 1920, 1924 (1995)) (“In determining the validity of an
agreement to arbitrate under the FAA, courts must first apply state law
governing contract formation.”). Although there is a strong presumption
favoring arbitration, that presumption arises only after the party seeking to
compel arbitration proves that a valid arbitration agreement exists.  J.M. Davidson, 128 S.W.3d at 227.  Because arbitration is contractual in nature,
the FAA generally does not require parties to arbitrate when they have not
agreed to do so.   In re Kellogg Brown
& Root, Inc., 166 S.W.3d at 738 (quoting Volt Info. Scis., Inc. v.
Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478–79, 109 S.
Ct. 1248, 1255 (1989)).

          C.      Arguments
Presented by PAC

          PAC contends the trial court erred
by granting Olstowski’s motion to compel arbitration because (1) the NDNUA
contract did not exist, (2) the claims raised and addressed by the arbitration
panel were not within the arbitration agreement’s scope, (3) the court erred by
compelling arbitration without first holding an evidentiary hearing, and (4)
Olstowski waived his right to arbitrate.

                   1.       NDNUA Contract

          The
court compelled arbitration based upon the arbitration provision found within
the NDNUA contract.  PAC does not
challenge the arbitration provision contained within the NDNUA, but instead attacks
both the validity of the contract and the very existence of the contract.  It asserts it was an invalid contract because
there was no consideration.  It attacks
the existence of the contract because it asserts neither it, nor Olstowski,
were parties to the agreement.  

                             a.       Attack
on Validity of NDNUA Contract

Contending that
the NDNUA was not a valid contract, PAC asserts that the trial court erred in
compelling arbitration.  PAC contends the
NDNUA is invalid because it asserts there was no consideration for the
contract.

          The
Texas Supreme Court has held that the validity of the contract as a whole must
be submitted to arbitration as long as the arbitration provision is valid.  See In re FirstMerit Bank, N.A., 52
S.W.3d 749, 753 (Tex. 2001) (orig. proceeding); Women’s Reg’l Healthcare, P.A.
v. FemPartners of N. Tex., Inc., 175 S.W.3d 365, 368 (Tex. App.—Houston
[1st Dist.] 2005, no pet.) (“Only if the arbitration clause is attacked on an
independent basis can the court decide the [validity of the contract] dispute;
otherwise, general attacks on the agreement are for the arbitrator.”) (quoting Will-Drill
Res., Inc. v. Samson Res. Co., 352 F.3d 211, 218–19 (5th Cir. 2003)); In
re H.E. Butt Grocery Co., 17 S.W.3d 360, 367 (Tex. App.—Houston [14th
Dist.] 2000, orig. proceeding) (“As a general rule, ‘questions related to the
enforcement of a contract as a whole are properly referable to an arbitrator;
it is only when attack is made on the arbitration clause itself that a court,
rather than an arbitrator, should decide questions of validity.’”) (quoting Prima
Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402–04, 87 S.
Ct. 1801, 1805–06 (1967)).  Because the
issue regarding the validity of the NDNUA as a whole is an issue for the
arbitrators, and PAC attacks the validity of the contract only by asserting
there was no consideration, we hold the court did not err in compelling
arbitration under the NDNUA.  See
Dewey v. Wegner, 138 S.W.3d 591, 601 (Tex. App.—Houston [14th Dist.] 2004,
no pet.) (holding validity of entire agreement at issue between parties must be
submitted to arbitration because Wegner did not attack arbitration agreement
specifically).

                             b.
     Attack on Existence of NDNUA Contract

          On
appeal, PAC also attacks the very existence of the NDNUA contract through its
contention that it and Olstowski were not parties to the NDNUA.  Generally, issues attacking the validity of the
contract containing the arbitration provision must be submitted to arbitration
as long as the arbitration provision is valid. 
See In re FirstMerit Bank, N.A., 52 S.W.3d at 753.  However, where a party attacks the very
existence of an agreement, as opposed to its continued validity or enforcement,
the issue is a matter for the court and not the arbitrators.  See
In re Morgan Stanley & Co., 293
S.W.3d 182, 189 (Tex. 2009).

          PAC
contends the NDNUA does not exist because, “neither PAC nor Olstowski were
listed as a signatory to the NDNUA.” 
Before the trial court, PAC raised several assertions regarding why the
NDNUA contract was invalid, but it did not attack the contract by the same
argument it makes on appeal, specifically  that neither it nor Olstowski were parties to
the NDNUA contract.  As a general rule, a
party is required to present a complaint to the trial judge before being
allowed to raise the issue on appeal.  Graham-Rutledge & Co. v. Nadia Corp.,
281 S.W.3d 683, 688–89 (Tex. App.—Dallas 2009, no pet.) (citing In re L.M.I., 119 S.W.3d 707, 711 (Tex.
2003) (to preserve issue for appellate review, including constitutional error,
party must present to trial court timely request, motion, or objection, state
specific grounds therefore, and obtain ruling)).  Because PAC did not raise this issue before
the trial court, and the trial court did not rule or refuse to rule on the
issue, we hold PAC waived any error regarding this issue.  See,
e.g., Graham-Rutledge & Co.,
281 S.W.3d at 688–89 (holding that appellant waived error because record failed
to show where it objected to denial of motion to compel discovery in
arbitration proceeding).

                   2.       Scope of Arbitration Agreement

          PAC
also contends that the claims decided by the arbitrators that were at issue
between Olstowski and PAC were not within the scope of the arbitration
agreement.  Federal and state law
strongly favors arbitration.  Cantella
& Co. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996) (orig.
proceeding).  Under the FAA, any doubt as
to whether a plaintiff’s claims fall within the scope of the arbitration
agreement must be resolved in favor of arbitration.  Id. 
Once an agreement is established, “a court should not deny arbitration ‘unless
it can be said with positive assurance that an arbitration clause is not susceptible
of an interpretation which would cover the dispute at issue.’”  Prudential Sec. Inc. v. Marshall, 909
S.W.2d 896, 899 (Tex. 1995) (per curiam) (orig. proceeding) (emphasis in
original).

          The
NDNUA contains a broad arbitration clause that does not include any exclusions
from arbitration.  The NDNUA requires
arbitration of “[a]ny controversy or claim arising out of or relating to this
Agreement . . . .”  The NDNUA is an
agreement allowing Olstowski to disclose his technology to PAC in exchange for
PAC’s promise not to use the technology. 
In this dispute, each of PAC’s claims against Olstowski, and Olstowski’s
counterclaims against PAC, derive from the conflicting claims between PAC and
Olstowski over who owned the intellectual property rights to the excimer
technology.  Because the claims between
PAC and Olstowski each concern the disputed ownership rights to the excimer
technology, we hold that their claims against each other are subject to the
arbitration provision of the NDNUA, and that the trial court properly compelled
arbitration.  See In re D.
Wilson Constr. Co., 196 S.W.3d at 783 (holding that where claims were
related to contract containing arbitration clause, claims “fall squarely within
the scope of the arbitration agreements”).

                   3.       Evidentiary Hearing

          PAC
further contends that the trial court erred by failing to conduct an
evidentiary hearing before compelling PAC and Olstowski to arbitration.  PAC asserts a hearing was required because of
allegedly contradictory affidavits and testimony presented by PAC.

          When
Texas courts are called on to decide if disputed claims fall within the scope
of an arbitration clause under the FAA, Texas procedure controls that
determination.  Jack B. Anglin Co.,
842 S.W.2d at 268 (citing Southland Corp. v. Keating, 465 U.S. 1, 16,
n.10, 104 S. Ct. 852, 861, n.10 (1984)).  
Texas Civil Practice and Remedies Code section 171.021 allows trial
courts to “summarily determine” the issue of whether to compel a party to
arbitrate its claims.  Civ. Prac. & Rem. Code Ann. § 171.021 (Vernon 2005); Jack B.
Anglin Co., 842 S.W.2d at 269 (“[W]e hold that the trial court may
summarily decide whether to compel arbitration on the basis of affidavits,
pleadings, discovery, and stipulations.”). 
However, if the material facts necessary to determine the proper
disposition of a motion to compel arbitration are controverted by an opposing
affidavit or otherwise admissible evidence, the trial court must conduct an
evidentiary hearing to determine the disputed material facts.  Jack B. Anglin Co., 842 S.W.2d at 269.

          Here,
any inconsistencies in the affidavits are not material facts to the issue of
arbitrability.  We hold the trial court
did not err in failing to hold an evidentiary hearing under these circumstances
where the material facts are found in documents exchanged between the parties.  See Stewart & Stevenson, LLC v. Galveston
Party Boats, Inc., No. 01-09-00030-CV, 2009 WL 3673823, at *12 (Tex.
App.—Houston [1st Dist.] Nov. 05, 2009, no pet.) (mem. op., not designated for
publication) (holding that trial court did not err in failing to hold
evidentiary hearing regarding allegedly opposing affidavits, where appellate
court could rely solely on material facts found in documents exchanged between
parties to determine validity of arbitration agreement).

                   4.       Waiver

          PAC
asserts that Olstowski waived his right to enforce the arbitration provision by
engaging in discovery and by filing a motion to dismiss.  There is a strong presumption against finding
that a party has waived its right to arbitration; the burden to prove waiver is
thus a heavy one.  In re Bank One,
N.A., 216 S.W.3d 825, 827 (Tex. 2007); In re D. Wilson Const. Co.,
196 S.W.3d at 783 (“There is a strong presumption against waiver under the
FAA.”).  Any doubts regarding waiver are
resolved in favor of arbitration.  In
re Bruce Terminix Co., 988 S.W.2d 702, 705 (Tex. 1998).  

          Waiver
may be express or implied, but it must be intentional.  EZ Pawn Corp. v. Mancias, 934 S.W.2d
87, 89 (Tex. 1996).  “A party waives an
arbitration clause by substantially invoking the judicial process to the other
party’s detriment.”  In re Citigroup
Global Mkts., Inc., 258 S.W.3d 623, 625 (Tex. 2008) (orig. proceeding)
(quoting Perry Homes v. Cull, 258 S.W.3d 580, 589–90 (Tex. 2008), cert.
denied, 129 S. Ct. 952 (2009)). 
Waiver is a question of law based on the totality of the
circumstances.  The test for waiver is
whether the party moving for arbitration “has substantially invoked the judicial
process to an opponent’s detriment, the latter term meaning inherent unfairness
caused by ‘a party’s attempt to have it both ways by switching between
litigation and arbitration.’” In re Citigroup Global Mkts., Inc., 258
S.W.3d at 625 (quoting Perry Homes, 258 S.W.3d at 597).

          In
determining whether a party waived an arbitration clause, the courts can
consider, among other factors: (1) whether the movant for arbitration was the
plaintiff (who chose to file in court) or the defendant (who merely responded),
(2) when the movant learned of the arbitration clause and how long the movant
delayed before seeking arbitration, (3) the amount of pretrial activity related
to the merits rather than arbitrability or jurisdiction, (4) the amount of
discovery conducted, and (5) whether the movant sought judgment on the merits.  See Perry Homes, 258 S.W.3d at 591–92;
In re Hawthorne Townhomes, L.P., 282 S.W.3d 131, 141 (Tex. App.—Dallas
2009, no pet.).

          The
Texas Supreme Court has found waiver of arbitration in only one case, Perry
Homes v. Cull.  258 S.W.3d at 591–92;
see Hawthorne Townhomes, L.P., 282 S.W.3d at 142.  In that case, the plaintiffs initially
“vigorously opposed” the defendants’ motion for arbitration, the parties
conducted nearly complete discovery, and the case was set for trial.  See Perry Homes, 258 S.W.3d at
585.  Then, after fourteen months of
litigation, the plaintiffs changed their minds and moved for arbitration.  The trial court granted the motion four days
before the date the case was set for trial. 
Id.  The Texas Supreme
Court held the arbitration was waived, set aside the arbitration award, and
remanded the case for trial.  Id. at
601.

          This
case is unlike Perry Homes.  The
record shows that PAC filed its original petition August 25, 2006, and that on
November 21, 2006 Olstowski filed his first expedited motion to refer the case
to arbitration.  In the interim,
Olstowski filed his original answer and counterclaim, a request for a permanent
injunction against PAC, and a motion for a protective order. 

          PAC
has not shown that Olstowski waived his right to arbitration under the factors
listed in Perry Homes.  First, it
was the defendant, Olstowski, who moved for arbitration.  See id. at 591–92.  Second, the record shows that Olstowski did
not delay before seeking arbitration as his first motion to compel arbitration
came less than three months after PAC’s initial petition.  See id.   Under the third and fourth factors, PAC
fails to demonstrate, and the record does not show, that any significant amount
of pretrial activity or discovery related to the merits of the case occurred prior
to Olstowski’s first expedited motion to compel arbitration.  See id.  Instead, the record shows that during the 58
days between Olstowski’s answer and his filing the motion to compel
arbitration, Olstowski’s actions were only to respond to PAC and to protect his
claim to intellectual property rights. 
Had Olstowski not responded to PAC’s petition, he would have faced a
default judgment.  Fifth, the record does
not show that Olstowski sought judgment on the merits.  See id.

          PAC
contends that Olstowski, nevertheless, waived the arbitration clause by moving
to dismiss the claims for lack of standing, yet the Texas Supreme Court has
held that a motion to dismiss for lack of standing does not sufficiently invoke
the judicial process to overcome the strong presumption against waiver.  See In re Vesta Ins. Group, Inc. 192
S.W.3d 759, 764 (Tex. 2006); In re Hawthorne Townhomes, L.P., 282 S.W.3d
at 142.  We hold that PAC has failed to
show that Olstowski “substantially invok[ed] the judicial process to [PAC]’s detriment.”  See Perry Homes, 258 S.W.3d at 589–90;
In re Hawthorne Townhomes, L.P., 282 S.W.3d at 142 (holding that
totality of circumstances did not show that defendants had substantially
invoked judicial process to plaintiff’s detriment).

          We
overrule PAC’s fifth issue.

Confirmation and
Vacation of Arbitration Award

          In
its sixth issue, PAC contends the trial court erred in confirming and not
vacating the arbitration award.  It
asserts the trial court erred because the claims at issue were exclusive to federal
jurisdiction; the award violated due process; the arbitration panel did not
make the necessary findings to support injunctive relief;  the award was ambiguous and contradictory;
the arbitration panel miscalculated damages due to PAC; the arbitration panel
refused to follow Texas law; the order granted more relief to Olstowski than
what was awarded by the panel; the arbitration panel granted relief outside the
NDNUA; the arbitration panel exceeded its authority for not finding Olstowski
liable for conversion; and, the trial court did not have jurisdiction to
confirm the arbitration award.

 

 

          A.      Vacatur

          We
review de novo a trial court’s confirmation of an arbitration award under the
FAA based on the entire record.  Royce
Homes, L.P., 2010 WL 184216 at *6; Myer v. Americo Life, Inc., 232
S.W.3d 401, 407 (Tex. App.—Dallas 2007, no pet.); Tanox, Inc. v. Akin, Gump,
Strauss, Hauer & Feld, L.L.P., 105 S.W.3d 244, 250 (Tex. App.—Houston
[14th Dist.] 2003, pet. denied).  All
reasonable presumptions are indulged to uphold the arbitrator’s decision, and
none are indulged against it.  Royce
Homes, L.P., 2010 WL 184216 at *6; Bailey & Williams v. Westfall,
727 S.W.2d 86, 90 (Tex. App.—Dallas 1987, writ ref’d n.r.e.).

          An
arbitration award is presumed valid and entitled to great deference.  Myer, 232 S.W.3d at 407–08.  When reviewing an arbitration award, we may
not substitute our judgment merely because we would have reached a different
decision.  Bailey, 727 S.W.2d at
90.  Because judicial review of an
arbitration award adds expense and delay that diminishes the benefits of
arbitration as an efficient, economical system for resolving disputes, our
review of the arbitration award is “extraordinarily narrow.”  See Myer, 232 S.W.3d at 408.  Accordingly, we may not vacate an award even
if it is based upon a mistake in law or fact. 
Royce Homes, L.P., 2010 WL 184216 at *7. 

          The
United States Supreme Court recently foreclosed any common law ground for
vacatur of an arbitration award and held that the statutory grounds provided in
sections 10 and 11 of the FAA for vacating, modifying, or correcting an
arbitration award are the exclusive grounds for vacating an arbitration
award.  Hall St. Assocs., L.L.C. v.
Mattel, Inc., 552 U.S. 576, 582, 128 S. Ct. 1396, 1402 (2008); Royce
Homes, L.P., 2010 WL 184216 at *7, 11; see also Citigroup Global Mkts.,
Inc. v. Bacon, 562 F.3d 349, 350 (5th Cir. 2009) (holding that Hall
Street restricts grounds for vacatur to those set forth in section 10 of
FAA); Anzilotti v. Gene D. Liggin, Inc., 899 S.W.2d 264, 266 (Tex. App.—Houston
[14th Dist.] 1995, no writ) (holding that courts may not vacate arbitration
award even if it is based upon mistake in law or fact).  Section 10(a) permits a court to vacate an
arbitration award:








(1) where the award was procured by corruption, fraud, or
undue means;

 

(2) where there was evident partiality or corruption in the
arbitrators, or either of them;

 

(3) where the arbitrators were guilty of misconduct in
refusing to postpone the hearing, upon sufficient cause shown, or in refusing
to hear evidence pertinent and material to the controversy; or, of any other
misbehavior by which the rights of any party have been prejudiced; or

 

(4) where the arbitrators exceeded their powers, or so
imperfectly executed them that a mutual, final, and definite award upon the
subject matter was not made.








 

9 U.S.C.S. § 10(a) (LexisNexis 2008); Royce Homes,
L.P., 2010 WL 184216 at *7.[2]  

          On
appeal, PAC lodges multiple assertions why the trial court erred in refusing to
vacate the arbitration award.  It,
however, does not assert any of the four statutory grounds listed in sections
10 and 11 as grounds for why the trial court erred in refusing to vacate the
arbitration award.  Furthermore, PAC’s
statements that the arbitration panel “exceeded its powers” in granting an
award against public policy or that the arbitrators did not make necessary
findings resulting in an award that is “not final and definite,” are statements
couched in common law arguments that do not provide valid ground for vacatur of
the arbitrators’ award.  We hold,
therefore, that the trial court did not err in confirming and refusing to
vacate the arbitration award.  See
Royce Homes, L.P., 2010 WL 184216 at *11 (holding common law arguments made
by appellant, such as manifest disregard of law and gross mistake, were not
valid grounds for vacatur of arbitration award as Hall Street forecloses
any common law grounds for vacatur, and statutory grounds in sections 10 and 11
of FAA are only grounds available for vacating, modifying, or correcting
arbitration award) (citing Hall Street, 1552 U.S. at 583, 128 S. Ct. at
1403; Citigroup Global Mkts., Inc., 562 F.3d at 350).

          B.      Trial Court’s Jurisdiction

          PAC contends the trial court had no
jurisdiction to confirm the arbitration award because the NDNUA states, “the
parties acquiesce to the jurisdiction of the U.S. District Courts and a
judgment upon an award rendered by the arbitrators may be entered in and by the
U.S. District Court.”

          The plain meaning of the parties’
agreement in the NDNUA to “acquiesce to the jurisdiction of the U.S. District
Court,” means that a U.S. District Court may confirm an award.  The agreement fails to specify that the U.S.
District Court is exclusive to other courts. 
State courts may confirm arbitration awards pursuant to the FAA.  See, e.g., Royce Homes, L.P.,
2010 WL 184216 at *11 (upholding state trial court’s confirmation of
arbitration award arbitrated pursuant to FAA). 
We hold the district court had jurisdiction to confirm the arbitration
award.

          C.      Trial Court’s Relief

          PAC contends the trial court
awarded greater relief than the arbitration award.  It asserts the court erred when it stated PAC
is “enjoined from interfering with Olstowski’s use and enjoyment of his excimer
technology and closed-loop technology.” 
It states this was an error because the “Arbitration Panel never awarded
Olstowski with ownership of closed loop technology.”  

          In its award, the arbitration panel
states, “The Panel DECLARES that Olstowski is the exclusive and sole owner of:








a.       the technology and methods embodied in
the patent applications styled “Improved Ozone Generator with Duel Dielectric
Barrier Discharge;” [sic] Improved Closed-Loop Light Intensity Control and
Related Fluorescence Application Method;[fn. 4] and “Excimer UV Fluorescence
Detection”;

 

b.       all the accompanying drawings,
blueprints, schematics and formulas created or drawn by either Olstowski or Virgil
Stamps of the application identified in or in support of ((a) and (b)
hereinafter referred to as the “Excimer Technology”); and

 

c.       Issued Patents and/or Patent Applications
pending entitled: Ozone Generator with Dual Dielectric Barrier Discharge and
Methods for Using Same, Improved Closed-Loop Light Intensity Control and
Related Fluorescence Application Method, and Excimer UV Fluorescence Detection
(as amended).

 

. . . . 

 

fn.4   However, the general closed-loop technology
is not new or unique as noted in finding no. 20.

 








In
the trial court’s order confirming the arbitration award, the trial court
noted:








(1) Olstowski is the
exclusive and sole owner of all technology in dispute,

 

. . . . 

 

(3) Further, PAC is
enjoined from interfering with Olstowski’s use and enjoyment of his excimer and
closed-loop technology, 

 

. . . .

 








          Because the trial court used the word
“his” to modify “closed-loop technology,” the trial court’s order, read in
conjunction with the arbitration award, plainly refers to the “Improved
Closed-Loop technology” referenced by the arbitration panel, and not to “the
general closed-loop technology” expressly excluded by the arbitration panel in
its footnote four.  We conclude the trial
court’s relief was consistent with the arbitrator’s award.

          We
overrule PAC’s sixth issue.

Atom’s Motion for
Summary Judgment

          Through
three issues, PAC contends the trial court erred when it granted Atom’s
no-evidence motion for summary judgment against PAC. 

          A.      Standard
of Review

          We
review summary judgments de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  A no-evidence motion for summary judgment
must be granted if, after adequate time for discovery, the moving party asserts
there is no evidence of one or more specified elements of a claim or defense on
which the adverse party would have the burden of proof at trial, and the
respondent produces no summary judgment evidence raising a genuine issue of
material fact on those elements.  Tex. R. Civ. P. 166a(i); LMB, Ltd.
v. Moreno, 201 S.W.3d 686, 688 (Tex. 2006). 
When the movant files its motion in proper form, the burden shifts to
the nonmovant to defeat the motion by presenting evidence that raises an issue
of material fact regarding the elements challenged by the motion.  LMB, Ltd., 201 S.W.3d at 688; Landers
v. State Farm Lloyds, 257 S.W.3d 740, 744 (Tex. App.—Houston [1st Dist.]
2008, no pet.).  

          In
a Rule 166a(i) no-evidence summary judgment, the movant represents that no
evidence exists as to one or more essential elements of the non-movant’s
claims, upon which the non-movant has the burden of proof at trial.  Tex.
R. Civ. P. 166a(i). The non-movant then must present evidence raising a
genuine issue of material fact on the challenged elements.  Id.  
A party who files a no-evidence summary judgment motion pursuant to rule
166a(i) has essentially requested a pretrial directed verdict.  Mack Trucks, Inc. v. Tamez, 206 S.W.3d
572, 581 (Tex. 2006).   A fact issue
exists if the evidence “rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions.”  King Ranch, Inc. v. Chapman, 118
S.W.3d 742, 751 (Tex. 2003) (quoting  Merrell
Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)).  If the evidence does no more than create a
mere surmise or suspicion of fact, less than a scintilla of evidence exists,
and summary judgment is proper.  Transp.
Ins. Co. v. Faircloth, 898 S.W.2d 269, 282 (Tex. 1995); Macias v. Fiesta
Mart, Inc., 988 S.W.2d 316, 317 (Tex. App.—Houston [1st Dist.] 1999, no
pet.).   A respondent is not required to
marshal its proof to defeat a no-evidence motion for summary judgment; it need
only point out evidence that raises a fact issue on the challenged elements.  Tex. R.
Civ. P. 166a(i), cmt. (1997). 
Because the trial court’s summary judgment does not specify the ground
on which the court relied for its ruling, we should affirm it if any theory
advanced by Atom has merit.  See
Weiner v. Wasson, 900 S.W.2d 316, 317 n.2 (Tex. 1995).








          B.      No
Answer








          In
its first issue, PAC contends the trial court erred because it granted Atom’s
summary judgment motion before Atom filed an answer to PAC’s original
petition.  PAC asserts, “[a]lthough Atom
did make an appearance in the case, Atom never filed a general denial,
affirmative defense or counter-claim before summary judgment was filed and
granted.”  PAC notes that Atom was not
included as a defendant in Olstowski’s original answer filed October 3, 2006,
but was included in an amended answer that included both Olstowski and Atom
filed on October 30, 2008, two months after the trial court granted Atom’s
summary judgment motion.  PAC also notes
Atom made an appearance in the case.     

          PAC
waived this error, if any.  As a
prerequisite to presenting a complaint for appellate review, the record must
show that a complaint was made to the trial court by a timely request,
objection, or motion and that the trial court (1) ruled on the request,
objection, or motion, either expressly or impliedly, or (2) refused to rule on
the request, objection, or motion, and the complaining party objected to the
refusal.  See Tex. R. App. P. 33.1.  Under rule 166a(c) of the Rules of Civil
Procedure, in the context of summary judgment, issues that are not expressly
presented to the trial court by written motion, answer, or response will not
serve as grounds for reversal of a summary judgment on appeal.  Tex.
R. Civ. P. 166a(c); Roark v. Stallworth Oil & Gas, Inc., 813
S.W.2d 492, 495 (Tex. 1991); City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979) (summary judgment non-movant could not raise
for first time on appeal additional fact issue that was not raised in its
response).  The party who allows an issue
to be tried by consent and who fails to raise the lack of a pleading before
submission of the case cannot later raise the pleading deficiency for the first
time on appeal.  Roark, 813 S.W.2d
at 495 (citing Tex. R. Civ. P.  67, 90).  As the Supreme Court has noted, “[t]here is
no valid reason why these rules should not apply to issues raised in the motion
for summary judgment.”  Id.  “[I]t would advance no compelling interest of
the parties or of our legal system to reverse a summary judgment simply because
of a pleading defect.”  Id.

          An
opposing party should use special exceptions to identify defects in a pleading
so that they may be cured, if possible, by amendment. Horizon/CMS Healthcare
Corp. v. Auld, 34 S.W.3d 887, 897 (Tex. 2000).  When a party fails to specially except,
courts should construe the pleadings liberally in favor of the pleader.  Id. 

          In
this case, the trial court set the submission date for the motion for summary
judgment on August 18, 2008.  Prior to
that date, the record shows that PAC failed to raise the issue regarding any
deficiencies in Atom’s pleadings.  PAC
did not file any special exceptions, and did not raise the issue in any
motions.  The first time the record shows
that PAC raised this issue is in PAC’s motion for reconsideration, filed after
the trial court granted the summary judgment. 
Because the record does not show that PAC brought this issue to the
attention of the trial court or that the trial court ruled on it before it
granted summary judgment, we hold that PAC failed to preserve error, if any, on
this issue. See Tex. R. App. P. 33.1;
Tex. R. Civ. P.  67, 166a(c); Roark, 813 S.W.2d
at 495 (holding that because Roark failed to direct trial court’s attention to
absence of pleading in his written response or before court rendered judgment,
complaint may not be raised on appeal); Hainsworth v. Berry, 485 S.W.2d
934, 934–35 (Tex. Civ. App.—Houston [1st Dist.] 1972, no writ) (holding failure
to object to absence of answer at trial level prevents contention on appeal
that pleadings were insufficient).

          We
overrule PAC’s first issue.

          C.      Res Judicata

          In its second issue, PAC states the
trial court erred when it granted Atom’s motion for summary judgment based on
“an affirmative defense and counter-claim that was never pled.”  PAC contends the summary judgment for Atom
was premised on the affirmative defense of res judicata, which was never
pleaded by Atom, and, therefore, an improper ground for summary judgment.

          The record shows Atom’s no-evidence
motion for partial summary judgment requests judgment against PAC for “all
causes of action against Atom” and it cites to rule 166a(i) of the Texas Rules
of Civil Procedure, the rule pertaining to no-evidence motions for summary
judgment.  See Tex. R. Civ. P. 166a(i).  In its motion, Atom states:

Atom is entitled to summary judgment because PAC cannot,
by depositions, answer to interrogatories, admissions on file, or other
admissible evidence, demonstrate there is any evidence to support its causes of
action for declaratory relief, tortious interference with continuing business
relations, conversion of intellectual property, breach of oral contract,
attorney fees, restitution/unjust enrichment (alternative to breach of contract),
fraudulent inducement, negligent misrepresentation (alternative to fraudulent
inducement), and application for temporary and permanent injunction.

          

In addition to
challenging the absence of any evidence to establish PAC’s claims, Atom also
asserts that the motion for summary judgment should be granted  because each of the causes of action were the
same as those that had been fully and completely adjudicated in the
arbitration.  Atom’s no-evidence motion
for summary judgment, therefore, makes two alternative challenges, (1) that
there is no evidence on each of PAC’s claims, and (2) that the arbitration
between Olstowski and PAC fully and completely adjudicated PAC’s claims against
Atom.  Without stating the basis for its
decision, the trial court granted summary judgment against PAC, which disposed
of all claims between PAC and Atom.

          When
there are multiple grounds for summary judgment and the order does not specify
the ground on which the summary judgment was rendered, the appealing party must
negate all grounds on appeal.  Ellis
v. Precision Engine Rebuilders, Inc., 68 S.W.3d 894, 898 (Tex. App.—Houston
[1st Dist.] 2002, no pet.) (citing State Farm Fire & Cas. Co. v. S.S.,
858 S.W.2d 374, 381 (Tex. 1993)).  If
summary judgment may have been rendered, properly or improperly, on a ground
not challenged, the judgment must be affirmed.  Id. (citing Holloway v. Starnes,
840 S.W.2d 14, 23 (Tex. App.—Dallas 1992, writ denied)).

          In this appeal, PAC does not challenge
each of the grounds under which the no evidence motion for summary judgment
could have been granted.  Excluding its
arguments concerning attorney’s fees that we address separately in this
opinion, PAC’s entire argument challenging the summary judgment is, as follows:


To obtain summary judgment, a movant must either negate at
least one element of the plaintiff’s theory of recovery, or plead and
conclusively establish each element of an affirmative defense.  Pursuant to Texas Rule of Civil Procedure 94,
res judicata is an affirmative defense that must be pled.  Atom’s Motion was predicated on and granted solely
on the doctrine of res judicata. 
Because the affirmative defense upon which Atom based its Motion was
never pled, the trial court erred in granting summary judgment on this basis
and it must be reversed.

 

(citations omitted) (emphasis in
original).

          In
this appeal, PAC challenges the res judicata portion of the no-evidence summary
judgment, but it fails to address Olstowski’s alternative challenge that there
exists no evidence on each of PAC’s claims. 
Because summary judgment may have been rendered on a ground not
challenged on appeal, we uphold the summary judgment, whether it may have been
rendered properly or improperly.  See
Ellis, 68 S.W.3d at 898.

          We overrule PAC’s second issue.

          D.      Stay

          In its fourth issue, PAC asserts the trial court erred in
granting Atom’s motion for summary judgment because the lawsuit between PAC and
Atom had been stayed by the trial court.   In its response to Atom’s summary judgment
motion at trial, PAC does not directly raise or identify evidence to counter
Atom’s no evidence motion for summary judgment. 
PAC’s sole response to the motion is its assertion that the trial court
should not grant the motion because the trial court stayed the case between PAC
and Atom.

The record shows that
there was only one order that stayed proceedings.  The order granted Olstowski’s motion to stay
the cause of action between Olstowski and Strozier. The order states:

After
considering the Defendant/Counter-plaintiff Franek Olstowski’s motion to stay
proceeding arbitration, the court GRANTS the motion and ORDERS this matter is
stayed as to cross-defendant Strozier until the arbitration proceeding is
complete. . . .








 








          Although
no written order shows a stay of the Atom proceedings, PAC claims the court
verbally ordered a stay.  At the hearing
to which PAC cites, the court states, “This [arbitration agreement] only refers
to Mr. Olstowski.  Just set [the
arbitration] for Mr. Olstowski. 
Everybody else will be stayed.  I
think [the arbitration proceeding] will resolve it anyway.” At the same
hearing, however, the court also states, “The Court grants the motion.  So you go back to the subject matter of the
motion, which was only as to Mr. Olstowski – I mean – Strozier.” 

          A
judgment or order that is rendered in writing and signed by the trial judge
becomes the official judgment of the court. 
Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas,
Ltd., 260 S.W.3d 67, 85 (Tex. App.—Houston [1st Dist.] 2008, no pet.).  Anytime there is a conflict between oral
pronouncements made by a trial judge and his written judgment or order, the
matters set forth in the written order control. 
In re JDN Real Estate-McKinney L.P., 211 S.W.3d 907, 914 (Tex.
App.—Dallas 2006, pet. denied); see also Capital Fin., 260 S.W.3d at 85
(“Recitals in a judgment or signed order of the court thus control over
conflicting recitals in the record.”).

          In
this case, the trial court’s written order clearly stays only those matters
between Olstowski and Strozier.  This
order controls over conflicting oral pronouncements, if any exist.  See In re JDN Real Estate-McKinney L.P.,
211 S.W.3d at 914.  We hold the
proceedings between Atom and PAC were never stayed, and that the trial court,
therefore, did not err in granting Atom’s motion.

          We
overrule PAC’s fourth issue.








Attorney’s Fees








          In its second issue, PAC contends
the trial court erred when it granted attorney’s fees to Atom in conjunction
with granting Atom’s summary judgment. 
The trial court awarded Atom $240,379.66 in attorney’s fees and
conditional awards in the event of a successful appeal.  See Hunsucker v. Fustok, 238 S.W.3d
421, 431 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (“The general rule is
that a trial court’s award of attorney’s fees may include appellate attorney’s
fees.”).

          A.      Standard of Review

          Generally, we review a trial court’s
decision to grant or deny attorney’s fees for an abuse of discretion.  See Bocquet v. Herring, 972 S.W.2d 19,
21 (Tex. 1998); EMC Mortgage Corp. v. Davis, 167 S.W.3d 406, 418 (Tex.
App.—Austin 2005, pet. denied).  A trial
court abuses its discretion if its decision is arbitrary, unreasonable, and
without reference to guiding principles. 
Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997).  When reviewing a trial court’s decision under
this standard, we must view the evidence in the light most favorable to the
trial court’s ruling and indulge every presumption in its favor.  Aquaduct, L.L.C. v. McElhenie, 116
S.W.3d 438, 444 (Tex. App.—Houston [14th Dist.] 2003, no pet.); Phillips
& Akers, P.C. v. Cornwell, 927 S.W.2d 276, 279 (Tex. App.—Houston [1st
Dist.] 1996, no writ). 








          The statute authorizing attorney’s
fees in this case is the Declaratory Judgment Act, which states, “In any
proceeding under this chapter, the court may award costs and reasonable and
necessary attorneys’ fees as are equitable and just.”  Tex.
Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 2008).  The grant or denial of attorney’s fees in a
declaratory judgment lies within the discretion of the trial court, and its
judgment will not be reversed on appeal absent a clear showing that it abused
its discretion.  Oake v. Collin County,
692 S.W.2d 454, 455 (Tex. 1985).  Any
fees must be reasonable and necessary, which are questions of fact, as well as
equitable and just, which are questions of law. 
Bocquet, 972 S.W.2d at 21. 
Although what constitutes reasonable attorney’s fees is a question of
fact, clear, direct, and uncontroverted evidence, even evidence from an
interested witness, will establish that attorney’s fees sought are reasonable
and necessary, where the opposing party had means and opportunity to disprove
the testimony but failed to do so.  See
Smith v. Patrick W.Y. Tam Trust, 296 S.W.3d 545, 547–48 (Tex. 2009) (citing
Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 882 (Tex. 1990));
Rosenblatt v. Freedom Life Ins. Co. of Am., 240 S.W.3d 315, 321 (Tex.
App.—Houston [1st Dist.] 2007, no pet.).

          B.      Arguments
Presented by PAC

          PAC asserts the court erred in
awarding fees because (1) Atom failed to plead for attorney’s fees, (2) the
action between PAC and Atom was stayed by the trial court, (3) Atom’s attorney’s
affidavit was inadmissible, (4) there was no statutory basis for the award, (5)
Atom failed to segregate between those fees generated for Olstowski and those
generated for Atom, and (6) there was insufficient evidence to support the
trial court’s award of attorney’s fees.

                   1.       Failure to Plead for Attorney’s Fees

          PAC
asserts the trial court erred in awarding attorney’s fees to Atom because “Atom
failed to plead for the recovery of attorney’s fees.”  PAC notes that Olstowski’s amended answer
including Atom as a defendant was not filed until after the trial court granted
Atom’s motion for summary judgment.  

          Absent
a mandatory statute, a trial court’s jurisdiction to render a judgment for
attorney’s fees must be invoked by pleadings, and a judgment not supported by
pleadings requesting an award of attorney’s fees is a nullity.  Alan Reuber Chevrolet, Inc. v. Grady
Chevrolet, Ltd., 287 S.W.3d 877, 884 (Tex. App.—Dallas 2009, no pet.).  However, the issue must not be waived or
tried by consent.  Id. (citing In
re Pecht, 874 S.W2d 797, 803 (Tex. App.—Texarkana 1994, no writ)).  

          As
discussed above, we hold this issue was waived when PAC failed to bring the
issue before the trial court until after the summary judgment was granted.  See Tex.
R. App. P. 33.1; Tex. R. Civ.
P.  67, 166a(c); Roark, 813
S.W.2d at 495 (holding that because Roark failed to direct trial court’s
attention to absence of pleading in his written response or before court
rendered judgment, complaint may not be raised on appeal).

                   2.       Stay

          PAC
also asserts that the court erred in awarding attorney’s fees because the
action between PAC and Atom was stayed, and additionally, Atom could not have
incurred attorney’s fees during the time period of the arbitration proceeding
because the claims between PAC and Atom were stayed from January 19, 2007
though at least the conclusion of the arbitration in November 2007.  As discussed above, the claims between Atom
and PAC were not stayed, and therefore the court did not err in granting
summary judgment.  Additionally, because
the case between PAC and Atom was not stayed, Atom could have incurred fees
generated during the time period of the arbitration proceeding to time the
summary judgment was rendered.

                    3.       The Affidavit

          PAC
next contends that Atom’s attorney’s affidavit regarding the amount of attorney’s
fees generated was inadmissible because (a) it was not sworn before a notary
public and the date on the jurat of the notarization makes the affidavit
inadmissible, and (b) Atom’s attorney’s affidavit was conclusory and the motion
was based upon hearsay. 

 

 

                             a.       Defects in
the Affidavit

          PAC
asserts the trial court erred in awarding fees because the affidavit supplying
evidence of the fees was never sworn to before a notary public.  As we construe PAC’s argument, it next
asserts that even if sworn, the affidavit was sworn to on February 9, 2008,
over a month after Atom filed its summary judgment.  It contends that because of the incorrect
date on the jurat of the notarization, the affidavit is inadmissible.

          Texas
Government Code section 312.01 sets out the requirements for an affidavit: “‘Affidavit’
means a statement in writing of a fact or facts signed by the party making it,
sworn to before an officer authorized to administer oaths, and officially certified
to by the officer under his seal of office.” 
See Tex. Gov’t Code Ann. §
312.011(1) (Vernon 2005).  Without
notarization or a jurat, an unsworn statement is not an affidavit, and it is
not proper summary judgment evidence.  Coastal
Cement Sand Inc. v. First Interstate Credit Alliance, Inc., 956 S.W.2d 562,
567 (Tex. App.—Houston [14th Dist.] 1997, writ denied).  When an affidavit admitted in support of
summary judgment is not properly authenticated by notarization, the party may
raise this “substantive” complaint for the first time on appeal.  Blanche v. First Nationwide Mortg. Corp.,
74 S.W.3d 444, 451 (Tex. App.—Dallas 2002, no pet.).

          In
this case, Atom’s attorney, Alton W. Payne, made statements in writing and
signed the affidavit.  The statements are
sworn to because the affidavit begins, “Before me, the undersigned authority,
personally appeared Alton W. Payne . . . .” 
See Norcross v. Conoco, Inc., 720 S.W.2d 627, 630 (Tex. App.—San
Antonio 1986, no writ) (holding affidavit that expressly stated affiant was
duly sworn was valid affidavit).  The
record shows Payne’s statement is sworn to before a notary, who is an officer
authorized to administer oaths.  See Tex. Gov’t Code Ann. § 602.002(4)
(Vernon 2003).  Finally, the statement is
officially certified by the notary under her seal of office.  The record shows that in its response to Atom’s
summary judgment, PAC’s only objection regarding the issue of the affidavit’s
validity was that the affidavit “was never sworn to and subscribed to before a
notary public.”  Because the record shows
that the affidavit was notarized by a notary public, we hold PAC’s objection at
trial and assertion on appeal lack merit.

          PAC
next contends that the error in the date of the jurat of the notarization
renders the notarization invalid.  Error
in the date of the notarization is a defect of form, not substance.  Nortex Drug Distribs., Inc. v. Sunset
Trails, Inc., No. 05-98-00676-CV, 2000 WL 1230766, at *4 (Tex. App.—Dallas
Aug. 31, 2000, no pet.) (mem. op., not designated for publication).  By failing to object to the trial court, PAC
waived this error if any.  See id.  Rule 166a(f) states that reversal cannot be
predicated on defects in the form of an affidavit or attachment unless the
opposing party objects and the proponent of the proof has the “opportunity” to
amend, but refuses.  See Tex. R. Civ. P. 166a(f); Vice v.
Kasprzak, No. 01-08-00168-CV, 2009 WL 3152122, at *6  (Tex. App.—Houston [1st Dist.] Oct. 1, 2009,
no pet. h.) (citing Grand Prairie Indep. Sch. Dist. v. Vaughan, 792
S.W.2d 944, 945 (Tex. 1990)).  The
notarization on Payne’s affidavit is dated February 8, 2008.  PAC had until August 18, 2008, the submission
date, to raise the issue regarding the date of the notarization before the
trial court.  Because it failed to object
to the date, we hold PAC waived any error regarding the date of the
notarization.  Eberstein v. Hunter,
260 S.W.3d 626, 629 (Tex. App.—Dallas 2008, no pet.) (holding appellant waived
right to complain about evidence on appeal due to failure to object to summary
judgment evidence).  

                             b.      Objections to Payne’s Affidavit

          Without
pointing to any specific statements within Payne’s affidavit, PAC generally
objected at trial on the basis that the affidavit “misstates the contents of
the various attachments,” “is conclusory,” is “without foundation,” and that
the attachments are “hearsay.”  PAC’s
arguments on appeal are the same.           

          An
objection based on a summary judgment affidavit’s conclusory statements is an
objection to substance, which may be raised for the first time on appeal;
whereas, an objection based on lack of foundation or hearsay is an objection to
form, which requires a written ruling for appellate review.  See Green v. Indus. Specialty Contractors,
1 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 1999, no pet.).  

          At
the outset, we note that the trial court did not rule on PAC’s objections to
the affidavit.  As a result, PAC’s objections
as to the form of the affidavit are waived. 
See Hogan v. J. Higgins Trucking, Inc., 197 S.W.3d 879, 883 (Tex.
App.—Dallas 2006, no pet.) (“[T]here must be some indication that the trial
court ruled on the objections in the record or in the summary judgment itself,
other than the mere granting of the summary judgment.”).  Moreover, PAC’s general objections of
“hearsay” or “without foundation,” as well as objections not specifically
identifying statements, would be too general to present an issue for review,
even if it had been preserved for appeal through an adverse ruling.  See Tex.
R. App. P. 33.1(a)(1)(a) (requiring that complaint be sufficiently
specific to make trial court aware of complaint).  

           PAC’s objection on appeal that the affidavit
is conclusory is an objection to the substance of the affidavit, which may be
raised for the first time on appeal.  See
Green, 1 S.W.3d at 130 (citing City of Wilmer v. Laidlaw Waste Sys.,
Inc., 890 S.W.2d 459, 467 (Tex. App.—Dallas 1994), aff’d, 904 S.W.2d
656, 660–661 (Tex. 1995).  Thus, PAC did
not need to obtain a ruling to raise this objection on appeal.  See id.  Nevertheless, PAC’s argument on appeal is
vague and overbroad.  PAC fails to cite
to the record, presents no argument to explain how the affidavit is conclusory,
and cites no authority to support its allegation that the affidavit is
conclusory. Accordingly, we hold this contention is waived.  Tex.
R. App. P. 38.1(h) (stating that brief must contain clear and concise
argument for contentions made with appropriate citations to authorities and
record); Fredonia State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279,
284–85 (Tex. 1994) (holding appellate court has discretion to deem points of
error waived due to inadequate briefing); see Kyle v. Countrywide
Home Loans, Inc., 232 S.W.3d 355, 359, 361 (Tex. App.—Dallas 2007,  pet. denied) (holding objection inadequate
when it fails to identify specific language that is objectionable, fails to
explain basis for the objection, and fails to show how alleged deficiencies
defeat motion for summary judgment); Stewart v. Sanmina Tex., L.P., 156
S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.) (objections insufficient if
they do not state specific basis for objection to particular statement).                                        

4.       Statutory
Basis for Award

          PAC
asserts the trial court’s award of attorney’s fees was based upon section
38.001 of the Texas Civil Practice and Remedies Code.  PAC contends the trial court erred by
awarding attorney’s fees under section 38.001 of the Civil Practice and Remedies
Code because the Code does not permit recovery of attorney’s fees for defending
a breach of contract claim.

          A
party may not recover attorney’s fees unless such recovery is authorized by
statute or provided for by contract between the parties.  State v. Mid-South Pavers, Inc., 246
S.W.3d 711, 730 (Tex. App.—Austin 2007, pet. denied) (citing  Travelers Indem. Co. of Conn. v. Mayfield,
923 S.W.2d 590, 593 (Tex. 1996)).  Under
section 38.001(8) of the Texas Civil Practice and Remedies Code, a party “may
recover” reasonable attorney’s fees if the claim is for an oral or written
contract.  See Tex. Civ. Prac. & Rem. Code Ann. §
38.001(8) (Vernon 2008).  Chapter 38 does
not provide for the recovery of attorney’s fees by a defendant who only defends
against a plaintiff’s contract claim and presents no contract claim of its
own.  Energen Res. MAQ, Inc. v.
Dalbosco, 23 S.W.3d 551, 558 (Tex. App.—Houston [1st Dist.] 2000, pet.
denied) (citing Am. Airlines, Inc. v. Swest, Inc., 707 S.W.2d 545, 547
(Tex. 1986) (holding defendant could not recover attorney’s fees under
predecessor to section 38.001 when defendant presented no contract claim of its
own)).

          In
its motion for summary judgment, Atom requested attorney’s fees under  both section 38.001 and under the Texas
Declaratory Judgments Act (TDJA), as found in section 37.003(a) of the Civil
Practices and Remedies Code.  The
Declaratory Judgments Act provides that in any proceeding under the Act “the
court may award costs and reasonable and necessary attorney’s fees as are
equitable and just.”  Tex. Civ. Prac. & Rem. Code Ann. §
37.009.

          Although
Atom requested fees under section 38.001, it is clear from the summary judgment
that the trial court awarded Atom fees under section 37.003.  Atom sought summary judgment to dispose of
“all causes of action against Atom.”  PAC
sought declaratory relief against Atom in its original petition.  In its summary judgment motion, Atom was
defending against PAC’s claims, and it sought fees under section 37.003 because
PAC’s suit “is a suit seeking declaratory relief.”   When the trial court granted the summary
judgment, it stated in the order that “Atom is entitled to attorney’s fees
incurred in the defense of this suit that were reasonable and necessary,
and Atom is entitled to attorney fees incurred in the defense of this
suit in the amount of $240, 379.66.” (emphasis in original).  Atom was defending against a suit for
declaratory judgment, and the trial court awarded Atom attorney’s fees based
only upon his defense, and not upon any alternative claims of Atom against
PAC.  We conclude that the trial court
did not grant attorney’s fees under section 38.001(8).  We hold the trial court properly awarded fees
under section 37.009 by exercising its discretion to award fees to a party defending
a claim for declaratory relief.  Cf.
Flagship Hotel, Ltd. v. City of Galveston, 117 S.W.3d 552, 566 (Tex.
App.—Texarkana 2003, pet. denied) (holding that, where party claimed it was
entitled to attorney’s fees under both sections 38.001 and 37.009 of the Texas
Civil Practice and Remedies Code, and order granting attorney’s fees did not
state basis for the award, it was not abuse of discretion to award attorney’s
fees under section 37.009 to party that did not prevail on contract claim if
that is equitable and just under circumstances).

                   5.       Segregation

          PAC
contends that Atom failed to segregate its attorney’s fees between those
generated for Olstowski and those generated for Atom.  

                             a.       Applicable
Law

          A
party seeking attorney’s fees has a duty to segregate nonrecoverable fees from
recoverable fees, and to segregate the fees owed by different parties.  French v. Moore, 169 S.W.3d 1, 17
(Tex. App.—Houston [1st Dist.] 2004, no pet.). 
If any attorney’s fees relate solely to a claim for which such fees are
unrecoverable, a claimant must segregate recoverable from unrecoverable
fees.  Tony Gullo Motors I., L.P. v.
Chapa, 212 S.W.3d 299, 313 (Tex. 2006). 
It is only when legal services advance both recoverable and
unrecoverable claims that the services are so intertwined that the associated
fees need not be segregated.  Id.
at 313–14; see also A.G. Edwards & Sons, Inc. v. Beyer, 235 S.W.3d
704, 710 (Tex. 2007).

          To
preserve a complaint for review on appeal, a party must present to the trial
court a timely request, motion, or objection that states the specific grounds
for the ruling requested and conforms to the requirements of the Rules of
Procedure and Evidence.  Tex. R. App. P. 33.1(a)(1)(A)–(B);
see Wal-Mart Stores, Inc. v. McKenzie, 997 S.W.2d 278, 280 (Tex.
1999).  The complaining party must also
show that the trial court ruled on the request, objection, or motion “either
expressly or impliedly.” Tex. R. App. P.
33.1(a)(2)(A).

                             b.      Analysis

          In
PAC’s original brief on appeal, PAC makes the following argument regarding
segregation,

In addition,
the claims and defenses Atom asserted are different from the claims and
defenses asserted by Olstowski; therefore, pursuant to the holding of Stewart
Title Guaranty Company v. Aiello, the fees must be segregated.  Atom failed to demonstrate, as a matter of
law, that the causes of action involved in the suit are dependent upon the same
set of facts or circumstances and thus are “intertwined to the point of being
inseparable.”  Because it failed to
segregate the fees or provide proper evidence, the court erred in awarding any
attorney’s fees.

 

(citations
omitted) (emphasis omitted).  

This argument was
never made by PAC in its response to Atom’s motion for summary judgment.  The response states:

Additionally,
there is no competent summary judgment evidence to support a claim of attorneys’
fees and PAC objects to Exhibit C to Atom’s Motion and its attachments.  First, Exhibit C, the affidavit of Alton
Payne, is not an affidavit.  As can be
seen, it was never sworn and subscribed to before a Notary Public.  Therefore, it cannot be considered at
all.  Second, Mr. Payne’s affidavit
misstates the contents of the various attachments and is conclusory without
foundation.  Third, since Exhibit C is
not proper summary judgment proof, the various attachments cannot be considered
as they are hearsay and without foundation. 
Fourth, all of the attorneys’ fees Atom seeks to recover are fees that
were generated for Olstowski as part of the arbitration.  In that proceeding, Olstowski was awarded
$375[,]000 in attorneys’ fees.  Any
additional award of attorneys’ fees to Atom would amount to a double
recovery.  Therefore, Atom’s request for
attorneys’ fees must be declined.

 

(citation omitted).

The argument on appeal
is different from the argument in PAC’s response to Atom’s motion for summary
judgment.  At trial, PAC’s position was
that the attorney’s fees to Atom would be a “double recovery” because the
arbitration awarded Olstowski those same fees. 
On appeal, however, PAC’s argument is that the fees must be segregated
because the claims and defenses asserted by Atom and Olstowski are not
intertwined.  We hold PAC has waived any
complaint regarding segregation by failing to raise this issue before the trial
court.  See Tex. R. App. Proc. 33.1 (prerequisite
to presenting complaint on appeal is timely complaint to the trial court); Green
Int’l, Inc. v. Solis, 951 S.W.2d 384, 389 (Tex. 1997) (“[I]f no one objects
to the fact that the attorney’s fees are not segregated as to specific claims,
then the objection is waived.”) (citing Hruska v. First State Bank of
Deanville, 747 S.W.2d 783, 785 (Tex. 1988)).

                    6.       Sufficiency of the Evidence

          On
appeal, PAC challenges the evidence offered by Atom to support the award of attorney’s
fees, and contends the evidence is insufficient to support the award.   It asserts that because Atom failed to
provide proper evidence, the court erred in awarding any attorney’s fees to
Atom.  For support, it maintains its
argument that the action between Atom and PAC was stayed, and that any fees
were, therefore, generated for Olstowski and not Atom.  

          The
amount of an award for attorney’s fees rests in the sound discretion of the
trial court, and its judgment will not be reversed on appeal absent a clear
showing of abuse.  Owen Elec. Supply,
Inc. v. Brite Day Constr., Inc., 821 S.W.2d 283, 288 (Tex. App.—Houston
[1st Dist.] 1991, writ denied).  When a
movant includes a prayer for attorney’s fees in its summary judgment motion, an
attached affidavit is “expert opinion testimony” that may be considered as
proof of the attorney’s fees incurred.  Id.  To create a fact issue, the non-movant must
file a counter affidavit contesting the reasonableness of the movant’s attorney’s
fee claim.  Id. (citing Tesoro
Petrol. Corp. v. Coastal Ref. & Mktg., Inc., 754 S.W.2d 764, 767 (Tex.
App.—Houston [1st Dist.] 1988, writ denied)); see also Tex. Civ. Prac. & Rem. Code Ann. §
18.001 (Vernon 2008).  Unless a
controverting affidavit is filed, an affidavit as to the amount of attorney’s
fees is presumed reasonable.  Tex. Civ. Prac. & Rem. Code Ann. §
18.001(b) (Vernon 2008); Hunsucker, 238 S.W.3d at 432.  Even if the testimony comes from an
interested witness, the movant establishes the amount of attorney’s fees as a
matter of law when the testimony is clear, direct, positive, not contradicted
by any other witness or attendant circumstances, and could have been easily
controverted by the non-movant.  See Smith, 296 S.W.3d at 547–48 (citing Ragsdale,
801 S.W.2d at 882).  The trial court
abuses its discretion in denying attorney’s fees when the movant files an
affidavit for fees and no fact issue is created by the non-movant.  See Hunsucker, 238 S.W.3d at 432
(citing Ragsdale, 801 S.W.2d at 882).

          Here, Atom attached to its motion for
summary judgment the affidavit of its attorney. 
Attached to the affidavit is a 51-page invoice of fees.  In this affidavit, Atom’s attorney, Payne,
detailed the specific work he and his law firm performed in the defense of Atom
and Olstowski, including hundreds of specific tasks, total number of hours
worked, and estimates of charges for any appellate work.  Payne stated that the total fees his law firm
had incurred in the defense of Atom and Olstowski against PAC’s claims were
$689,529.66.  He then noted that the
arbitration award to Olstowski was $449,150 in attorney’s fees, and that there
was a remaining $240,379.66 balance still due from Atom.  In the 51-page invoice attached to the
affidavit, the total fees listed by the invoice was $690,729.60.  Almost every invoice page specifies that the
invoice was generated “[i]n reference to . . . Franek Olstowski and Atom
Instrument Corp.”

          PAC
fails to cite, and the record does not show, that it filed an affidavit
controverting Payne’s testimony.  PAC,
therefore, failed to raise a material fact issue as to the reasonableness of
the fees set forth in the affidavit because it filed no affidavit controverting
Payne’s testimony, even though it could have readily done so if it believed his
claimed fee was unreasonable.  Such
uncontroverted testimony will be taken as a matter of law, when, as here, the
opposing party has means and opportunity to disprove it.  Ragsdale, 801 S.W.2d at 882.  The amount requested by Atom was clear,
direct, and positive in this case. 
Although the trial court had discretion to award less than the requested
amount if the amount requested was unreasonable, not credible, or questionable,
the court here would abuse its discretion if it had not awarded any attorney’s
fees at all in the face of uncontroverted evidence of fees incurred and
anticipated.  See Hunsucker, 238
S.W.3d at 432; Ragsdale, 801 S.W.2d at 882.

          Although
Payne included an itemized invoice of the services and charges he billed to
Atom and Olstowski, PAC asserts that the affidavit was still insufficient
because did not identify how many hours were spent on Atom’s defense
specifically.  However, an attorney’s fee
affidavit need not do this.  See, e.g.,
Hugh Wood Ford, Inc. v. Galloway, 830 S.W.2d 296, 298 (Tex. App.—Houston
[14th Dist.] 1992, writ denied) (holding that attorney’s detail concerning work
he had done, together with his total estimate of hours worked, was sufficient
to support award of attorney’s fees). 
Here, Atom’s attorney provided an affidavit which sufficiently detailed
the nature and extent of the services rendered, with Atom listed in the subject
area on nearly every page of the invoice. 


          PAC
also complains the trial court awarded Atom fees that had already been awarded
to Olstowski by the arbitration panel so that it is paying twice for the same
fees.  In its motion, Atom requested
attorney’s fees for the amount of fees generated in excess of those awarded to
Olstowski by the arbitration award. 
Double award does not occur because PAC is ordered to pay fees that are
not part of the amount awarded by the arbitrators to Olstowski.

          Taking
into consideration (1) the evidence presented to the trial court regarding attorney’s
fees and (2) the fact that no controverting affidavit or other evidence was
submitted regarding the reasonableness of legal fees, we hold that the court
did not abuse its discretion by awarding attorney’s fees to Atom in the amount
of $240,379.66, and
conditional attorney’s fees in the event of a successful appeal.

          We overrule PAC’s second issue.




 

Conclusion

          We affirm the
judgment of the trial court.

 

 

                                                

                                                                   Elsa
Alcala

                                                                   Justice

Panel consists of Chief Justice Radack,
and Justices Alcala, and Higley.

 

 

 

                                                          

 











[1]           For clarity, we have numbered the
issues one through six.  Roman numeral
one with subissues A, B, C, and D, are numbered issues one through four,
respectively.  Roman numeral two with subissues
A and B are numbered issues five and six, respectively.





[2]           Section 11 of the Federal Arbitration
Act refers to modification or correction of an arbitration award.  See 9 U.S.C.S. § 11
(LexisNexis 2008).